STATE OF NORTH CAROLINA v. JERRY LEE HAMILTON

No. 385A97

(Filed 8 October 1999)

**1. Appeal and Error— exclusion of evidence—failure to make offer of proof—significance obvious from record**

Defendant did not waive appellate review of the exclusion of evidence by failing to make an offer of proof where the significance of the evidence was obvious from the record.

**2. Evidence— witness as perpetrator—prior knife threat— exclusion not error**

In a prosecution for first-degree murder of a victim who was stabbed to death, the trial court did not err by precluding defendant from questioning a State's witness about a knife threat made by the witness on a police officer ten years earlier in order to identify and implicate the witness as the perpetrator of the murder where the modus operandi were different in that there were no unusual facts surrounding the prior knife threat that were also present in the circumstances surrounding the victim's death; the evidence does not point directly to the guilt of the State's witness; and the evidence would create, at most, only a speculative inference that the witness killed the victim. N.C.G.S. § 8C-1, Rule 404(b).

**3. Appeal and Error— preservation of issues—argument not presented at trial**

Defendant failed to preserve for review his argument that a prior knife threat by a State's witness was admissible for

impeachment purposes where all of the discussion about this evidence at trial centered around Rule 404(b), and defendant failed to make this argument at trial.

## 4. Sentencing— capital sentencing—mitigating circumstance—no significant criminal history—refusal to submit

The trial court did not err by refusing to submit in a capital sentencing proceeding, over defendant's objection, the State's requested (f)(1) mitigating circumstance that defendant had no significant history of prior criminal activity where the State presented evidence of, and defendant stipulated to, convictions for second-degree murder and second-degree rape. N.C.G.S. § 15A-2000(f)(1).

## 5. Sentencing— capital sentencing—death sentence not disproportionate

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate where defendant was convicted on the basis of premeditation and deliberation, the jury found as an aggravating circumstance that defendant had previously been convicted of felonies involving violence to the person, N.C.G.S. § 15A-2000(e)(3), and the evidence showed that defendant stabbed the victim numerous times.

Justice FREEMAN did not participate in the consideration or decision of this case.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Walker (R.G., Jr.), J., on 5 March 1997 in Superior Court, Richmond County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 8 March 1999.

*Michael F. Easley, Attorney General, by William P. Hart, Special Deputy Attorney General, for the State.*

*Marshall L. Dayan for defendant-appellant.*

MARTIN, Justice.

On 19 February 1996 defendant Jerry Lee Hamilton (defendant) was indicted for the murder of Joy Jones Goebel (Goebel). Defendant was tried capitally at the 10 February 1997 Criminal Session of Superior Court, Richmond County. The jury found defendant guilty of

STATE v. HAMILTON

[351 N.C. 14 (1999)]

first-degree murder on the basis of premeditation and deliberation. Following a capital sentencing proceeding, the jury recommended a sentence of death, and the trial court entered judgment in accordance with that recommendation.

The State's evidence tended to show the following: According to the testimony of defendant's nephew, Johnny Ray Knight (Knight), defendant and Knight went to Jimmy's Lounge and Game Room on Battley Dairy Road in Richmond County, North Carolina, around 7:00 p.m. on 17 December 1994. Defendant and Knight drank beer and played pool until 2:00 a.m., when the owner, Jimmy Freeman (Freeman), announced it was closing time. Defendant and Knight left the bar together and stood outside in the parking lot.

At this time Goebel arrived in the parking lot, spoke briefly with defendant and Knight, and entered the bar to purchase beer. Freeman, however, refused to sell Goebel beer because it was after closing time. Goebel asked Freeman if they were still selling beer in South Carolina. Freeman told her that he did not think so. Goebel left the bar and went outside to the parking lot where defendant and Knight were loitering. Defendant, Knight, and Goebel left the parking lot and walked down Battley Dairy Road discussing whether they could still purchase beer in South Carolina.

As Freeman closed the bar, Knight came running back and asked if anyone was going toward South Carolina who could give them a ride. Freeman said no. Freeman asked Knight who was with him and Knight replied defendant and Goebel. Knight then rejoined defendant and Goebel.

While defendant, Goebel, and Knight were walking together, Knight began looking for a can to use to smoke crack cocaine until Goebel told Knight that she had a glass pipe they could use. They then stopped walking and proceeded into a clearing in the woods off Battley Dairy Road to smoke crack cocaine. Knight recalled smoking the first rock but could not remember who smoked the second. Knight testified that defendant smoked a cocaine rock in the early morning hours of 18 December 1994.

After smoking crack cocaine, Knight and Goebel started kissing and decided to have sex. Knight testified that he had a knife in his pants and that he stuck it in the ground before having sex with Goebel. While Goebel and Knight were having sex, Knight noticed that defendant was standing to his right.

When Knight finished having sex with Goebel, he put his pants back on, lit a cigarette, and sat by a pine tree near the road. When Knight looked back, he saw what appeared to be defendant having sex with Goebel. Knight testified, "[Goebel] was lyin' on her back with her legs open, and [defendant] was standin' there playing with hisself [sic], rubbing hisself [sic] up and down on her or something." When Knight looked back a second time, he saw Goebel on her hands and knees and defendant behind her with his pants down.

Shortly thereafter, Knight heard Goebel scream. Knight turned back and saw defendant, with Knight's knife in his hand, struggling with Goebel. Goebel kicked defendant and knocked the knife out of his hand. Defendant then hit Goebel in the mouth, and she fell back. Defendant grabbed the knife and stabbed Goebel repeatedly. At one point, defendant stabbed Goebel so deeply that the knife would not come out of her body. Defendant had to use two hands to jerk the knife out, causing Goebel's body to lift off the ground. Knight could not recall how many times defendant stabbed Goebel but indicated that he believed she was dead because she did not appear to be breathing.

Knight testified that defendant complained he had hurt his hand and that defendant used Goebel's blood-soaked shirt to wrap around his hand. Defendant told Knight to help him pull Goebel's body further into the woods. Defendant also told Knight that if either of them got caught, he should take the blame and not mention the other's name. Knight further testified that he became frustrated at defendant's demands for Knight to make sure Goebel was dead, so he picked up a stick and struck Goebel in the head several times. As defendant and Knight left the scene, defendant held the knife, and Knight picked up Goebel's shoes and pants.

As they walked home, Knight threw Goebel's pants and shoes into a pond, and defendant took the knife, wiped it clean with Goebel's shirt, handed it to Knight, and told Knight to bury it. Knight stomped the knife into the ground. When defendant arrived home, he put Goebel's shirt in a trash barrel and burned it.

Dr. Thomas Clark, a forensic pathologist with the Office of the Chief Medical Examiner, performed Goebel's autopsy. Dr. Clark testified that there were two blunt-force injuries to Goebel's head and thirty-two sharp-force injuries, or stab wounds, to Goebel's head, back, chest, and abdomen. Three of the sharp-force injuries had the

potential to be rapidly fatal. Dr. Clark opined that multiple stab wounds caused Goebel's death.

At trial defendant offered evidence to show that he was not with Knight and Goebel when Goebel was murdered. Defendant admitted that he went to Jimmy's Lounge and Game Room with Knight on 17 December 1994 and that he played pool and drank beer until closing time. Defendant testified that, as he left the bar, he grabbed the door and shut it on his hand. Defendant further testified that he and Knight were standing outside the bar when Goebel arrived in the parking lot. Defendant did not remember seeing her go inside the bar, but recalled that she was not there long before she came back outside and stated that Freeman would not sell her any beer. Defendant, Knight, and Goebel walked down the road away from the bar. Defendant stated that the three of them stopped walking when defendant said he was going home because his hand was hurting. Defendant left Knight and Goebel and went home.

Defendant introduced the testimony of two witnesses, Shawn Ponds (Ponds) and Joseph Staton (Staton), to offer evidence that Knight killed Goebel. Ponds and Staton both knew Knight and were in jail with Knight after Goebel was murdered.

Ponds testified that Knight told him the story of how he beat Goebel in the head and repeatedly stabbed her. Staton testified that, in late December 1994 or early January 1995, Knight told him that he had killed Goebel and described hitting her in the face with a stick, knocking out some of her teeth, and then stabbing her in the chest several times. Knight allegedly told Staton the same story in late February 1995. According to Staton, Knight never mentioned that defendant was involved in the murder. Staton further testified that Knight told him the Sheriff's Department had threatened Knight with the death penalty and that Knight said he "wasn't going to do it by himself" and indicated he would blame it on someone.

## GUILT-INNOCENCE PHASE

By assignment of error, defendant contends the trial court erred in granting the State's motion *in limine* to preclude defendant, by and through his counsel, from questioning Knight about a prior knife threat in 1987. Defendant argues that, under Rule 404(b), Knight's 1987 knife threat was relevant to show the identity of the person who murdered Goebel. N.C.G.S. § 8C-1, Rule 404(b) (Supp. 1998).

Alternatively, defendant contends that evidence of Knight's knife threat was admissible for impeachment purposes.

At trial, the State made an oral motion *in limine* to prohibit defendant from cross-examining Knight about a 1987 knife threat on a police officer which did not result in a conviction against Knight. The trial court ruled that such evidence was not "admissible under any of the avenues of admission that are made available in 404(b)."

[1] We first consider whether defendant waived appellate review by failing to make an offer of proof at trial for the record.

> "It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify." "[I]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record."

*State v. Johnson*, 340 N.C. 32, 49, 455 S.E.2d 644, 653 (1995) (quoting *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985)) (citation omitted); *see also State v. Anderson*, 350 N.C. 152, 176, 513 S.E.2d 296, 310-11 (1999); *State v. Cheek*, 307 N.C. 552, 561, 299 S.E.2d 633, 639 (1983); *State v. Fletcher*, 279 N.C. 85, 99, 181 S.E.2d 405, 414 (1971).

Although the record does not contain an offer of what Knight's response might have been to defendant's proposed question, the significance of the evidence is obvious from the record. Defendant's apparent purpose under Rule 404(b) was to use Knight's answer to identify and implicate Knight as the perpetrator of the Goebel murder. Consequently, we turn to the merits of defendant's first argument.

[2] Under Rule 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b).

General principles of relevancy govern the "admissibility of evidence of the guilt of one other than the defendant." *State v. Cotton,* 318 N.C. 663, 667, 351 S.E.2d 277, 280 (1987). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Evidence that someone other than defendant committed the crime for which defendant is charged generally "is relevant and admissible as long as it does more than create an inference or conjecture in this regard. It must point directly to the guilt of the other party." *Cotton,* 318 N.C. at 667, 351 S.E.2d at 279. "[S]uch evidence must tend to *both* implicate another *and* be inconsistent with the guilt of the defendant." *Id.* at 667, 351 S.E.2d at 279-80.

Evidence of other crimes on the issue of identity can be offered when the *modus operandi* of the other crime and the crime which is the subject of the current trial are " 'similar enough to make it likely that the same person committed both crimes.' " *State v. Hoffman,* 349 N.C. 167, 183-84, 505 S.E.2d 80, 90 (1998) (quoting *State v. Carter,* 338 N.C. 569, 588, 451 S.E.2d 157, 167 (1994), *cert. denied,* 515 U.S. 1107, 132 L. Ed. 2d 263 (1995)), *cert. denied,* —— U.S. ——, 143 L. Ed. 2d 522 (1999). However, there must be "some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes." *State v. Moore,* 309 N.C. 102, 106, 305 S.E.2d 542, 545 (1983); *see also State v. Green,* 321 N.C. 594, 603, 365 S.E.2d 587, 593, *cert. denied,* 488 U.S. 900, 102 L. Ed. 2d 235 (1988); *State v. Riddick,* 316 N.C. 127, 133, 340 S.E.2d 422, 426 (1986).

In the instant case, the record reveals no unusual facts surrounding the knife threat that were also present in the circumstances surrounding Goebel's death. Thus, any answer elicited from Knight on cross-examination about the 1987 knife threat would create, at best, a speculative inference that Knight killed Goebel—an inference that does not "point directly" to the guilt of Knight. *See Cotton,* 318 N.C. at 667, 351 S.E.2d at 279. Accordingly, the trial court did not err by excluding evidence of Knight's 1987 knife threat pursuant to Rule 404(b).

[3] Alternatively, defendant argues that evidence concerning Knight's 1987 knife threat was admissible for impeachment purposes.

"In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or

motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1).

At trial defendant failed to indicate that he wanted to elicit information concerning Knight's 1987 knife threat for impeachment purposes. All discussion on this issue centered around Rule 404(b).

> COURT: Before we bring the jury in there has been some indication that the defense might seek to ask a question of the State's witness that they contend is admissible under 404(b). You want to make an oral motion with regard to that[?]

> MR. GWYN [prosecutor]: Yes, sir. It has come to my attention over the luncheon recess that the defense in its cross examination of Mr. Knight is going to attempt to cross examine him on some ten year or older knife assault or an attempted knife assault that the defense apparently is contending is somehow a part of a planned scheme that somehow fits under Rule of Evidence 404(b). I think it would be entirely prejudicial in its intent. Having just learned it, I can't have filed a written motion, Your Honor. I apologize for making this an oral motion, but I think it does substantial damage to the case of the State at this point for even the question to be asked. So I ask out of the presence of the jurors for the Court to consider the motion in limine and rule upon it, believing that even if the question is asked it would be unfair and do irreparable damage to the ability of the jury to fairly hear the case and try the case. I can't see how quite frankly something that happened ten years ago for which there is no conviction that I'm able to find or the defense at this point is able to is part of a plan or scheme to do anything.

> COURT: I understand your concern. Mr. Sharpe, do you want to be heard?

> MR. SHARPE [defense counsel]: Well, I think we ought to put it on the record what will probably be the question put to Mr. Knight will be: Did he pull a knife on Officer Prevatte in 1987? That of course is over ten years from this point in time, but it's not over ten years from the December, 1994, point in time.

> COURT: Anything else?

> MR. SHARPE: No, Your Honor.

**STATE v. HAMILTON**

[351 N.C. 14 (1999)]

COURT: State's oral motion in limine is allowed. Counsel is instructed not to ask that question. Court finds it would not be admissible under any of the avenues of admission that are made available in 404(b).

On appeal, defendant, for the first time, argues that Knight's testimony concerning the 1987 knife threat was offered for impeachment purposes. Because defendant failed to make this argument at trial, he cannot " 'swap horses between courts in order to get a better mount in the Supreme Court.' " *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)). Additionally, defendant's assignment of error for this issue addresses Rule 404(b), not impeachment. Our scope of appellate review is limited to those issues set out in the record on appeal. N.C. R. App. P. 10(a); *State v. Williamson*, 333 N.C. 128, 138, 423 S.E.2d 766, 771 (1992). Accordingly, defendant's alternative argument is not properly presented for our consideration.

SENTENCING PROCEEDING

[4] In his next assignment of error, defendant contends that the trial court erred in not submitting, over defendant's objection, the State's requested (f)(1) mitigating circumstance: "The defendant had no significant history of prior criminal activity." *See* N.C.G.S. § 15A-2000(f)(1) (1997).

At the charge conference, the State requested that the trial court submit the (f)(1) statutory mitigating circumstance. Defendant opposed the State's request. The trial court denied the State's request and stated:

COURT: I'm not going to give that. That just makes no sense to me. The State's aggravating factor is that he has two prior violent felony convictions and then instruct the jury they can consider that he has no significant criminal history when there is evidence from the first phase that he has at least one other conviction other than those two that are being sought by the State as aggravating factors. I'll not give that.

In determining whether to submit the (f)(1) statutory mitigating circumstance, "the trial court is required to determine whether a rational jury could conclude that defendant had no *significant* history of prior criminal activity. If the trial court makes such a determination, the mitigating circumstance must then be submitted to the jury." *State v. Wilson*, 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988).

The trial court has no discretion in determining whether to submit a mitigating circumstance once it determines that a jury could reasonably find the mitigating circumstance. *Id.* at 142, 367 S.E.2d at 604 (construing N.C.G.S. § 15A-2000(b)).

During the sentencing proceeding, the State presented evidence of, and defendant stipulated to, convictions for second-degree rape and second-degree murder. The State's evidence indicated that, in 1988, defendant pulled a knife on a fifteen-year-old girl, hit her several times in the face, and raped her twice in North Carolina and twice in South Carolina. Defendant pled guilty to two charges of second-degree rape related to the rapes in North Carolina. The State also presented evidence that, in 1974, defendant aimed a shotgun at Sam Gerald and said, "I'm going to kill that son-of-a-bitch standing there." The State's evidence showed that Gerald was getting out of a car when defendant aimed the gun at him and that Gerald had not provoked defendant in any way. As Gerald tried to get back in the car to leave, defendant shot and killed him. Defendant pled guilty to second-degree murder. Additionally, during the guilt-innocence phase of the instant case, defendant testified that he had been convicted in 1987 of misdemeanor assault on a female and misdemeanor escape.

Despite the evidence presented concerning defendant's prior criminal activity, defendant's own stipulations to the prior convictions, and defendant's objection to the State's request for the (f)(1) mitigating circumstance, defendant argues on appeal that his criminal history was such that a rational juror could conclude there was no significant history of prior criminal activity. We disagree.

In *State v. McNeil*, 350 N.C. 657, —— S.E.2d —— (1999), this Court held that a prior criminal history including a violent felony involving death is significant for purposes of N.C.G.S. § 15A-2000(f)(1). *Id.* at 684, —— S.E.2d at ——. Likewise, in the present case, defendant's prior criminal history included a conviction for second-degree murder. Accordingly, defendant's argument that the trial court erred by failing to submit the (f)(1) mitigating circumstance is without merit.

## PRESERVATION ISSUES

Defendant raised the following two issues for the purposes of permitting this Court to reexamine its prior holdings and preserving the issues for any possible further judicial review: (1) the trial court erred in instructing that jurors should find nonstatutory mitigating circumstances only if they find those circumstances to have mitigat-

ing value; and (2) the trial court erred in instructing that each juror "may," rather than "must," consider any mitigating circumstance or circumstances the juror determined to exist by a preponderance of the evidence in deciding sentencing Issues Three and Four. We have previously considered and rejected defendant's arguments and find no compelling reason to depart from our prior holdings. Therefore, we reject these assignments of error.

## PROPORTIONALITY REVIEW

Having found no error in either the guilt-innocence phase of defendant's trial or the capital sentencing proceeding, we turn, pursuant to N.C.G.S. § 15A-2000(d)(2), to the statutory duties reserved for this Court in capital cases. We must determine whether: (1) the record supports the jury's finding of any aggravating circumstances upon which the sentencing court based its sentence of death; (2) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

In the present case, defendant was convicted of first-degree murder on the basis of premeditation and deliberation. The jury found the aggravating circumstance that defendant had been previously convicted of felonies involving the use of violence to the person, N.C.G.S. § 15A-2000(e)(3). In mitigation, one or more jurors found three statutory mitigating circumstances: the murder was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); the victim was a voluntary participant in defendant's homicidal conduct, N.C.G.S. § 15A-2000(f)(3); and the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6). One or more jurors also found the catchall mitigating circumstance, N.C.G.S. § 15A-2000(f)(9). The jury did not find that any of the three nonstatutory mitigating circumstances submitted had mitigating value. After thoroughly examining the record, transcript, and briefs, as well as defendant's stipulations, we conclude that the evidence fully supports the aggravating circumstance found by the jury in this case. Further, there is no indication that the sentence of death was imposed under the influence of any arbitrary considerations. We turn now to our final statutory duty of proportionality review.

STATE v. HAMILTON

[351 N.C. 14 (1999)]

**[5]** In the proportionality review it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). "One purpose of proportionality review 'is to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury.' " *State v. Atkins*, 349 N.C. 62, 114, 505 S.E.2d 97, 129 (1998) (quoting *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988)), *cert. denied*, —— U.S. ——, 143 L. Ed. 2d 1036 (1999). We have found the death sentence to be disproportionate in seven cases. *See State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death sentence disproportionate.

In *Benson*, *Stokes*, *Rogers*, and *Jackson*, the defendants either pled guilty or were convicted solely on the basis of the felony murder rule. In the instant case, however, defendant was convicted of first-degree murder on the basis of premeditation and deliberation. "[A] finding of premeditation and deliberation indicates 'a more calculated and cold-blooded crime.' " *State v. Harris*, 338 N.C. 129, 161, 449 S.E.2d 371, 387 (1994) (quoting *State v. Lee*, 335 N.C. 244, 297, 439 S.E.2d 547, 575, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994)), *cert. denied*, 514 U.S. 1100, 131 L. Ed. 2d 752 (1995).

Furthermore, in the present case, the jury found as an aggravating circumstance that defendant had previously been convicted of felonies involving violence to the person, N.C.G.S. § 15A-2000(e)(3). "[T]here are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to sustain death sentences." *State v. Warren*, 347 N.C. 309, 328, 492 S.E.2d 609, 619 (1997), *cert. denied*, 523 U.S. 1109, 140 L. Ed. 2d 818 (1998). The (e)(3) aggravating circumstance, which the instant jury found, is among them. *See State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995); *see also State*

*v. Wooten,* 344 N.C. 316, 474 S.E.2d 360 (1996), *cert. denied,* 520 U.S. 1127, 137 L. Ed. 2d 348 (1997); *State v. Lyons,* 343 N.C. 1, 468 S.E.2d 204, *cert. denied,* 519 U.S. 894, 136 L. Ed. 2d 167 (1996); *State v. Reeves,* 337 N.C. 700, 448 S.E.2d 802 (1994), *cert. denied,* 514 U.S. 1114, 131 L. Ed. 2d 860 (1995); *State v. Brown,* 320 N.C. 179, 358 S.E.2d 1, *cert. denied,* 484 U.S. 970, 98 L. Ed. 2d 406 (1987). In none of the cases in which this Court has found the death penalty disproportionate has the jury found the aggravating circumstance that the defendant had been previously convicted of a felony involving the use of violence to the person. *See State v. Peterson,* 350 N.C. 518, ——, 516 S.E.2d 131, 143-44 (1999); *State v. Murillo,* 349 N.C. 573, 613, 509 S.E.2d 752, 775 (1998); *Harris,* 338 N.C. at 161, 449 S.E.2d at 387; *State v. Rose,* 335 N.C. 301, 351, 439 S.E.2d 518, 546, *cert. denied,* 512 U.S. 1246, 129 L. Ed. 2d 883 (1994).

It is also proper to compare this case to cases in which this Court has found the death penalty to be proportionate. *McCollum,* 334 N.C. at 244, 433 S.E.2d at 164. This Court considers all the cases in the pool of similar cases when engaging in proportionality review. However, as we have previously stated, "we will not undertake to discuss or cite all of those cases each time we carry out the duty." *Id.* Nonetheless, we conclude that the present case is more similar to cases in which we have found a sentence of death proportionate than to those in which we have found a sentence of death disproportionate.

The jury's finding of the prior conviction of felonies involving violence to the person, N.C.G.S. § 15A-2000(e)(3), is a significant factor in finding the death sentence proportionate. *See, e.g., State v. Strickland,* 346 N.C. 443, 468-70, 488 S.E.2d 194, 209-10 (1997), *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 757 (1998); *Harris,* 338 N.C. at 161, 449 S.E.2d at 387; *State v. Artis,* 325 N.C. 278, 338-44, 384 S.E.2d 470, 504-08 (1989); *Brown,* 320 N.C. at 214, 358 S.E.2d at 27.

Whether a sentence of death is "disproportionate in a particular case ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green,* 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied,* 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). Thus, based upon the characteristics of this defendant and the crime he committed, we are convinced that the sentence of death recommended by the jury and ordered by the trial court in the instant case is not disproportionate.

For the foregoing reasons, we hold that defendant received a fair trial, free of prejudicial error, and that the death sentence entered in the present case must be and is left undisturbed.

NO ERROR.

Justice FREEMAN did not participate in the consideration or decision of this case.