STATE OF NORTH CAROLINA
v.
STEVE WAYNE GOLDEN

No. COA12-265

Filed 4 December 2012

### 1. Evidence—prior crimes or bad acts—admissible

The trial court did not err in a prosecution for perpetrating a hoax on law enforcement officers by use of a false bomb or other device by admitting evidence of defendant's prior acts against his estranged wife. The prior incidents were properly admitted to show defendant's intent to perpetrate a hoax by use of a false bomb and because those incidents were part of the chain of events leading up to the crime. Similarity of the acts was not pertinent to the purpose for which the incidents were admitted.

**2. Evidence—prior crimes or bad acts—not more prejudicial than probative**

Evidence of prior bad acts against defendant's estranged wife was not more prejudicial than probative in a prosecution for perpetrating a hoax on law enforcement officers by use of a false bomb or other device found in his truck at his estranged wife's house.

**3. Police Officers—perpetrating a hoax on law enforcement with false bomb—evidence sufficient**

There was sufficient evidence of perpetrating a hoax on law enforcement officers by use of a false bomb or other device. Regarding the disputed first and fourth elements of the offense, and viewing the evidence in the light most favorable to the State, a jury could reasonably have found that defendant himself placed the device in his truck and that defendant intended to trick the officers.

**4. Criminal Law—flight—after commission of crime—evidence insufficient**

The trial court committed harmless error in a prosecution for perpetrating a hoax on law enforcement officers by use of a false bomb or other device by giving an instruction on flight when there was no evidence that defendant fled after the commission of the crime. There was no prejudice because there was no reasonable possibility that the jury would have found defendant not guilty in the absence of the flight instruction.

Appeal by defendant from judgment entered 4 August 2011 by Judge Edgar B. Gregory in Randolph County Superior Court. Heard in the Court of Appeals 27 August 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly D. Potter, for the State.*

*Leslie C. Rawls for defendant-appellant.*

GEER, Judge.

Defendant Steve Wayne Golden appeals from his conviction of perpetrating a hoax on law enforcement officers by use of a false bomb or other device. Defendant primarily argues on appeal that evidence of prior acts against his estranged wife was improperly admitted under Rule 404(b) of the North Carolina Rules of Evidence. Because, however, that evidence tended to show that defendant intended to deceive people with the realistic fake bomb he admittedly

made and because those acts were part of the chain of circumstances leading to the charged offense, we hold that the trial court did not err in admitting the evidence.

## Facts

The State's evidence tended to show the following facts. On 27 March 2010, Darlene Golden was in her home in Asheboro, North Carolina when she looked out of her window and saw defendant, her estrangèd husband, in his truck. Ms. Golden watched the truck pull up close to the curb in front of her home and then drive away. Ms. Golden had previously obtained a domestic violence protection order against defendant following two incidents in which defendant aggressively confronted and threatened Ms. Golden. After seeing defendant in his truck, Ms. Golden called 911.

Asheboro Police Officer Mike Welborn responded to Ms. Golden's call. After speaking with Ms. Golden about the incident, Officer Welborn left and drove around the area to see if defendant was still in the neighborhood. When he failed to locate defendant's truck, Officer Welborn returned to Ms. Golden's home. Upon his return, Officer Welborn saw defendant walking down Ms. Golden's driveway. When defendant noticed Officer Welborn's patrol car, defendant turned and ran. Officer Welborn drove around the block, exited his vehicle, and ran after defendant.

Officer Welborn overtook defendant as defendant attempted to crawl and hide underneath defendant's truck. Officer Welborn ordered defendant out and, as defendant stood, the officer noticed a large knife in defendant's waistband. Officer Welborn then repeatedly commanded defendant to lie back down on the ground. Despite these commands, defendant refused to lie down and began walking toward the officer. According to Officer Welborn, it " 'appeared that nothing mattered to [defendant]' " and that defendant " 'looked as if he was deciding what to do as he was refusing to lay down.' " This behavior, and the presence of the knife in defendant's waistband, caused Officer Welborn to draw his service weapon. Only when defendant was a short distance from Officer Welborn did defendant finally comply with the commands to lie on the ground. Officer Welborn handcuffed defendant, arrested defendant for violating the domestic violence protection order, and removed the knife from defendant's belt as well as a second knife from defendant's pocket.

STATE v. GOLDEN

[224 N.C. App. 136 (2012)]

According to Officer Welborn, once defendant was handcuffed and seated on the curb, he became "irate" and began "[c]ussing" Officer Welborn and the other officers. After defendant was taken into custody, Asheboro Police Officer Russ Smith arrived at the scene. Officer Smith observed that defendant was "very irate, cursing loudly." Specifically, Officer Smith heard defendant " 'shouting "fuck you" several times to the officers on the scene,' " as well as making threats against Ms. Golden. Asheboro Police Lieutenant Maxine Wright also observed defendant "yelling and screaming." When Lieutenant Wright tried to calm defendant down, he cursed at her.

Officer Smith then asked defendant if there was anything in defendant's truck that would compromise the officers' safety. Defendant responded that there was not. When Officer Smith asked defendant if the officers could search his truck, defendant responded by "bobbing his head back and forth, and [saying] something to the effect of 'There's nothing in there; go ahead.' " Officer Welborn then drove defendant to jail.

Lieutenant Wright and another responding officer, Asheboro Police Officer Charles Perrin, conducted a search of defendant's truck. Officer Perrin immediately observed, " 'in plain view, three knives: One on the dash, one knife was sticking in the dash, and one in the driver's door.' " The knife laying on the dash was, according to Lieutenant Wright, a "martial arts-type knife that had a handle and the knife was round."

In addition to the knives, Lieutenant Wright quickly saw, behind the driver's seat of defendant's truck, "the butt of . . . a firearm" that looked like a rifle. The gun ultimately turned out to be a "BB rifle." Lieutenant Wright then saw, also on the driver's side of the vehicle, an item with a long wooden handle that she determined to be a "meat cleaver." Upon further search, the officers found a bag containing "a cylinder-type item" covered with aluminum foil, black electrical tape, red wires, and batteries.

Although Lieutenant Wright initially believed the cylindrical device was used to smoke marijuana (because she had smelled marijuana in the truck), she began to suspect the object was an improvised explosive device when she also found latex gloves in the bag containing the object. During training, she had learned that explosive materials were handled using latex gloves. Lieutenant Wright immediately evacuated the area and contacted Asheboro Police Officer Terry Jones who worked with a canine unit specializing in explosives detection.

Officer Jones responded to the scene with his canine unit. When Officer Jones examined the device, he agreed that it could be an improvised explosive device. He photographed the device and sent the photograph to Officer Timothy Loughman of the Cumberland County Sheriff's Office to obtain a more expert opinion. After looking at the photograph, Officer Loughman advised Officer Jones to treat the device as a potential explosive device and to evacuate the area within 1,000 feet of the device.

Meanwhile, at the jail, Officer Welborn watched defendant " 'pacing around the jail, stating he was not staying and when he gets out, that bitch was dead.' " According to Officer Welborn, defendant " 'continuously made threats about killing his wife' " in front of the officers at the jail and, anytime Ms. Golden's name was mentioned, defendant's " 'anger would build until the point he would punch the walls in rage.' "

While still at the jail with defendant, Officer Welborn learned that there was a potential bomb at the scene of defendant's arrest. Officer Welborn then asked defendant, " 'Is there anything around [Ms. Golden's] residence or in your vehicle that I need to know about?' " Defendant then replied " 'that there was nothing around the residence, but there was a device in his vehicle that he made with someone and it was fake.' " Defendant claimed " 'it was a gag' " and described the object as " 'a toilet paper roll with batteries and wires taped around it.' " Officer Welborn immediately relayed this information to Lieutenant Wright, but advised her to " 'use caution due to [defendant's] behavior towards law enforcement,' " including defendant's anger, his "yelling and screaming," and his cursing of the officers.

Lieutenant Wright contacted the Greensboro bomb squad, which services Asheboro, and requested assistance. The bomb squad responded to the call and followed its protocol regarding potential explosive devices. After taking extensive measures, including the use of a remotely operated robot, the bomb squad determined that the object in defendant's truck was not an explosive device.

Defendant was indicted for perpetrating a hoax by use of a false bomb or other device on 12 July 2010. Defendant was subsequently indicted for being a habitual felon on 11 October 2010. Defendant did not present any evidence at trial. The jury found defendant guilty of perpetrating a hoax by use of a false bomb or other device. Defendant then pled guilty to being a habitual felon, and the trial court sentenced defendant to a presumptive-range term of 116 to 149 months imprisonment. Defendant timely appealed to this Court.

I

**[1]** Defendant first argues that the trial court erred under Rules 404(b) and 403 of the Rules of Evidence in admitting evidence of defendant's prior hostile behavior towards Ms. Golden. Defendant argues that "the evidence was not relevant to the offense charged and any probative value was substantially outweighed by its prejudicial effect." (Emphasis omitted.) We disagree.

A determination whether evidence was properly admitted under Rule 404(b) involves a three-step test. First, is the evidence relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried? *State v. Coffey*, 326 N.C. 268, 278, 389 S.E.2d 48, 54 (1990). Second, is that purpose relevant to an issue material to the pending case? *State v. Anderson*, 350 N.C. 152, 175, 513 S.E.2d 296, 310 (1999). Third, does the probative value of the evidence substantially outweigh the danger of unfair prejudice? *State v. Summers*, 177 N.C. App. 691, 697, 629 S.E.2d 902, 907 (2006).

With respect to the first two steps, "[w]e review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). We review the trial court's determination of the third step— the Rule 403 balancing test—for abuse of discretion. *Id.*

Here, defendant challenges the admission of Ms. Golden's testimony regarding three interactions between defendant and Ms. Golden. In the first incident, defendant went to Ms. Golden's workplace and presented her with a document titled the "Separation and Last Testimony and Will of Steven Wayne Golden." The document accused Ms. Golden of adultery, disavowed all support for Ms. Golden and her children, and was signed with defendant's thumb print in blood followed by "strange symbols." The second incident involved defendant "ranting and raving" in and around Ms. Golden's workplace and stating to Ms. Golden, " 'If I ever catch you with somebody or if I ever see you dating anybody, I'll put you and him in the hospital.' "

The third incident occurred on the evening that defendant learned Ms. Golden had obtained a domestic violence protective order against him. Defendant drove to Ms. Golden's father's house, and, as Ms. Golden drove away from the residence, defendant angrily hit the side window of Ms. Golden's car where their young son was sitting in his car seat. Defendant subsequently followed Ms. Golden in

STATE v. GOLDEN

[224 N.C. App. 136 (2012)]

his truck, pulled in front of her to stop her, exited his truck and walked toward Ms. Golden's car, but then reentered his truck and drove away.

The trial court found this evidence relevant to show defendant's "plan, intent, and scheme in the present case" and instructed the jury that the evidence should only be considered for those limited purposes. Proper purposes for the admission of evidence under Rule 404(b) include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident."

Rule 404(b) is "a clear general rule of *inclusion*[.]" *Coffey*, 326 N.C. at 278, 389 S.E.2d at 54. As a result, the list of purposes set out in Rule 404(b) "is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53 (1995).

In addition to the proper purposes enumerated in Rule 404(b), "[i]t is well established that evidence is admissible under Rule 404(b) when the other bad acts are part of the chain of circumstances leading up to the event at issue or when necessary 'in order to provide a complete picture for the jury.' " *State v. Rollins*, 220 N.C. App. 443, 448, 725 S.E.2d 456, 461 (quoting *State v. Madures*, 197 N.C. App. 682, 688, 678 S.E.2d 361, 365 (2009)), *appeal dismissed*, 366 N.C. 242, 731 S.E.2d 415 (2012). *See also State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990) (" 'Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.' " (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985))).

Here, the evidence of the prior incidents with Ms. Golden was properly admitted both because it showed defendant's intent to perpetrate a hoax by use of a false bomb and because those incidents were part of the chain of events leading up to the crime. The evidence was necessary to complete the story of the crime for the jury.

Defendant was charged with violating N.C. Gen. Stat. § 14-69.2(a) (2011), which provides:

> [A]ny person who, with intent to perpetrate a hoax, conceals, places, or displays any device, machine, instru-

> ment or artifact, so as to cause any person reasonably to believe the same to be a bomb or other device capable of causing injury to persons or property is guilty of a Class H felony.

The mens rea element—intent to perpetrate a hoax—requires that the defendant intend to commit or carry out an act intended to trick or dupe. *See Black's Law Dictionary* 1256 (9th ed. 2009) (defining "perpetrate" as "[t]o commit or carry out"); *Webster's Third New International Dictionary* 1075 (1968) (defining "hoax" as "an act intended to trick or dupe").

The challenged evidence tended to show that defendant had an ongoing objective of scaring Ms. Golden by suggesting that he would physically harm her and others around her. A jury could reasonably conclude from the evidence that defendant made the fake bomb with the intention that it appear real as part of a scheme to terrorize Ms. Golden. Likewise, a jury could decide that the fake bomb was in defendant's truck because he intended to use it to scare Ms. Golden and anyone with her. The evidence would, therefore, permit the jury to conclude that defendant did not intend the device to be merely a "gag," as he claimed, but rather intended that it trick Ms. Golden and other people into believing it was a bomb. The evidence was, therefore, relevant to defendant's intent.

Further, the evidence of the three incidents is part of a chain of events that place the crime in context. Those incidents tend to explain why defendant created the fake bomb and why he had it in his truck when he drove to Ms. Golden's house. Those incidents are "necessary in order to provide a complete picture for the jury." *Rollins*, 220 N.C. App. at 448, 725 S.E.2d at 461 (internal quotation marks omitted).

Defendant, however, argues that the three incidents did not meet the requirement of similarity and quotes *State v. Al-Bayyinah*, 356 N.C. 150, 155, 567 S.E.2d 120, 123 (2002) (internal quotation marks omitted): "Evidence of a prior bad act generally is admissible under Rule 404(b) if it constitutes substantial evidence tending to support a reasonable finding by the jury that the defendant committed the *similar* act." He contends that because the three incidents were not similar to the charged offense, they were inadmissible under Rule 404(b).

Defendant has failed to recognize that the admissibility of prior bad acts evidence under Rule 404(b) depends on the specific purpose for which the evidence is offered and the facts of each case. *See State v. Carter*, 338 N.C. 569, 589, 451 S.E.2d 157, 168 (1994) ("[T]he facts

of each case will ultimately determine whether evidence of a defendant's former crime is pertinent in his prosecution for another independent crime."); *State v. Haskins*, 104 N.C. App. 675, 682, 411 S.E.2d 376, 382 (1991) ("When determining the relevancy of other crimes evidence offered to prove defendant's motive, the degree of similarity between the uncharged and the charged crimes is considerably less important than when such evidence is offered to prove identity.").

In *Al-Bayyinah*, evidence of two prior robberies was offered to prove the defendant's identity as the perpetrator of a third robbery— the charged offense. 356 N.C. at 152-53, 567 S.E.2d at 121-23. Our Supreme Court emphasized that, when used to prove identity, admission of evidence under Rule 404(b) "is constrained by the requirements of similarity and temporal proximity." *Id.* at 154, 567 S.E.2d at 123.

When, as in *Al-Bayyinah*, prior acts are admitted to establish identity or to show a common plan or scheme, the similarity of the prior acts to the charged offense is a critical factor in making the prior acts relevant to the purpose for which the evidence is offered. It is the similarity that shows identity and a common plan. *See, e.g., Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159 ("Prior acts are sufficiently similar if there are some unusual facts present in both crimes that would indicate that the same person committed them." (internal quotation marks omitted)). Here, under the circumstances of this case, "similarity" is simply not pertinent to the purpose for which the incidents were admitted. *See, e.g., State v. Murillo*, 349 N.C. 573, 591, 509 S.E.2d 752, 762 (1998) ("The evidence was admitted to show the escalating nature of [defendant's] attacks and to rebut his claim that the killing was accidental. Testimony about a defendant-husband's arguments with, violence toward, and threats to his wife are properly admitted in his subsequent trial for her murder.").

Defendant additionally argues that the evidence was inadmissible under Rule 404(b) because "it requires pure speculation to suggest that the presence of the gag device in the truck is evidence of intent to use the device against Mrs. Golden" and that "[s]peculation alone is not sufficient to support the court's allowing the evidence." We hold that the evidence presented by the State is sufficient to give rise to a reasonable inference that defendant created the fake bomb to scare Ms. Golden.

While defendant points to *State v. Hamilton*, 351 N.C. 14, 20, 519 S.E.2d 514, 519 (1999), as support for his position, that decision addressed the similarity requirement when evidence of a prior bad

act is offered to prove the identity of the perpetrator of the crime. In *Hamilton*, the Court upheld the trial court's exclusion of evidence proffered by the defendant of a prior knife attack by a witness. *Id.* Although the defendant contended that the prior knife attack was relevant to prove that the witness—and not the defendant—had committed the murder at issue, the Court noted that the defendant had failed to meet his burden of showing some unusual facts present in both crimes sufficient to suggest that the same person—the witness—had committed both crimes. *Id.* The Court held that in the absence of unusual facts tying the witness to both crimes, "any answer elicited from [the witness] on cross-examination about the 1987 knife threat would create, at best, a speculative inference that [the witness] killed [the victim]—an inference that does not point directly to the guilt of [the witness]." *Id.* (internal quotation marks omitted). Since the evidence in this case was not offered to prove identity or any other purpose requiring similarity of crimes, *Hamilton* does not suggest that admission of the incidents involving Ms. Golden was error.

[2] The question remains whether, under Rule 403, the trial court abused its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See Summers*, 177 N.C. App. at 697, 629 S.E.2d at 907. "An abuse of discretion occurs when a trial judge's ruling is manifestly unsupported by reason." *Id.* (internal quotation marks omitted).

The trial court, in this case, heard the prior bad acts evidence outside the presence of the jury and heard arguments from counsel before ruling on admissibility of the evidence. The court specifically considered Rule 403 and concluded that "the probative value of the prior bad acts substantially outweighs the possible prejudicial effect." In addition, the trial court gave the jury a limiting instruction before admitting the evidence. Given the importance of the evidence in tending to show the chain of circumstances leading to the commission of the charged offense, the context of the offense, and defendant's intent, and the careful process employed by the court, the trial court's determination that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice was entirely reasonable. *See Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 160-61 (finding no abuse of discretion given relevance of evidence to proper purpose and given trial court's careful handling of issue, including hearing testimony of 404(b) witness outside presence of jury, hearing arguments of counsel, considering Rule 403, and giving a limiting instruction). Accordingly, we conclude that the trial court did not abuse its discretion in admitting the evidence.

II

**[3]** Defendant next argues that the trial court erred in denying defendant's motion to dismiss. "This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

The elements of the crime of perpetrating a hoax by use of a false bomb or other device are (1) concealing, placing, or displaying, (2) a false bomb or other device, (3) in such a way as to cause another person to reasonably believe that the device was a bomb or other device capable of causing injury to persons or property, (4) with the intent to perpetrate a hoax. *See* N.C. Gen. Stat. § 14-69.2(a). Defendant does not dispute that the State presented substantial evidence as to the second and third elements.

Regarding the first element, defendant argues that his admission to Officer Welborn that there was a "gag" device in defendant's truck showed only that defendant knew the device was located in his truck and not that defendant concealed, placed, or displayed the device. However, viewing the evidence in the light most favorable to the State, a jury could reasonably have found that defendant himself placed the device in his truck given his admission that he made the fake bomb and given the evidence regarding his actions toward Ms. Golden. Further, the jury could also have reasonably found that defendant concealed the device by not telling Officer Smith about the device when asked whether there was anything in defendant's truck that could harm the officers. *See Black's Law Dictionary* 327 (9th ed. 2009) (defining "concealment," in part, as "[t]he act of refraining from

disclosure; esp., an act by which one prevents or hinders the discovery of something"). Thus, the State presented substantial evidence of the first element.

Regarding the fourth element, defendant argues that the State failed to present evidence that defendant intended to trick the officers. As previously discussed, the Rule 404(b) evidence—as well as the evidence of the events the day of the charged crime—suggested that defendant had made the fake bomb and put it in his truck with the objective of using it to scare Ms. Golden and anyone with her. In addition, when confronted by the officers, defendant engaged in behavior threatening enough to cause an officer to draw his gun and engaged in an extremely hostile verbal assault on the officers. Immediately thereafter, defendant consented to the officers searching his truck and told them that there was nothing in the truck that could harm the officers. Yet, the truck contained multiple knives, a meat cleaver, and a BB rifle, as well as the fake bomb. Given this evidence, a jury could reasonably conclude that defendant intended to trick the officers as well when he did not tell them that the bomb-like device in his truck was fake.

Defendant nonetheless contends that there was not substantial evidence of the requisite intent because defendant had "not displayed or even mentioned [the device] to anyone before the police search discovered it." Defendant's argument fails to recognize that the State's evidence tended to show defendant's *purposeful* concealment of the existence of the device. Moreover, defendant's contention that he "did not invite the police to search, so that they might discover and be fooled by the device," mischaracterizes the evidence. In the light most favorable to the State, defendant invited the officers to search when he replied to Officer Smith's request for consent to search the truck by stating, " 'There's nothing in there; go ahead.' "

Defendant also contends that his admission, at the jail, that a "gag" device was in his truck belies any intent to deceive or trick the officers. Defendant's argument views the evidence in the light most favorable to defendant, contrary to the established standard for motions to dismiss. *See Rose*, 339 N.C. at 192, 451 S.E.2d at 223. In addition, defendant only admitted a "gag" device was in his truck *after* the officers located the device. Defendant's belated admission does not absolve him of the requisite mental state when defendant initially stated there was nothing in his truck the officers needed to know about before they searched it.

III

**[4]** Finally, defendant argues that the trial court erred by overruling defendant's objection and giving a jury instruction on flight when the evidence did not show flight in relation to the charged offense. "[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

"[O]ur courts have long held that a trial court may not instruct a jury on defendant's flight unless 'there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.'" *State v. Levan*, 326 N.C. 155, 164-65, 388 S.E.2d 429, 433-34 (1990) (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)). Here, defendant objected to the following instruction by the trial court:

> The State contends, and the defendant denies, that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient, in itself, to establish the defendant's guilt.

We agree with defendant that the trial court's flight instruction was improper because there is no evidence "'defendant fled *after* commission of the *crime charged*.'" *Id.* at 165, 388 S.E.2d at 434 (emphasis added) (quoting *Irick*, 291 N.C. at 494, 231 S.E.2d at 842). The State's evidence tended to show that defendant fled from Ms. Golden's driveway when defendant initially saw Officer Welborn's patrol car. Officer Welborn gave chase and overtook defendant as defendant attempted to crawl underneath his truck, parked near Ms. Golden's house.

Defendant's alleged commission of the charged crime could not have occurred until defendant consented to the search of his vehicle and stated to Officer Smith that there was nothing in the vehicle that the police needed to be concerned about despite defendant's knowledge of the fake bomb. Defendant made no attempt to flee *after* making these statements to Officer Smith. In fact, the officers had already secured defendant in custody at the time defendant made these statements. Thus, defendant's flight from Ms. Golden's house cannot be

considered as evidence of defendant's guilt of the crime of perpetrating a hoax by use of a false bomb or other device.

The trial court's instruction on flight was, therefore, erroneous. "However, an error in jury instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (quoting N.C. Gen. Stat. § 15A-1443(a) (2007)).

Here, defendant does not make any specific argument regarding prejudice from the erroneous instruction. Based on our review of the record, we cannot conclude that there is a reasonable possibility that the jury would have found defendant not guilty in the absence of the flight instruction. The instructional error was harmless given defendant's admission that he made the very realistic-looking fake bomb together with his repeated attempts to scare Ms. Golden (even after entry of the domestic violence protective order), his extraordinarily hostile and non-cooperative behavior upon being arrested, and his glib claim, when consenting to a search, that his truck contained nothing harmful even though there were several knives, a meat cleaver, a BB rifle, and a fake bomb in it. We, therefore, hold that defendant received a trial free of prejudicial error.

No error.

Chief Judge MARTIN and Judge STROUD concur.