STATE OF NORTH CAROLINA v. WILLIAM MICHAEL MACK, Defendant

No. COA09-672

(Filed 17 August 2010)

**1. Homicide— second-degree—car chase—sufficient evidence**

The trial court did not err by denying defendant's motion to dismiss a charge of second-degree murder where defendant's passenger died in a car crash that followed their theft of televisions from a store and a police chase. Defendant drove extremely dangerously in order to evade arrest; the argument that he lacked malice because he experienced no problems until he encountered police spikes views the evidence in the light most favorable to defendant rather than the State.

**2. Appeal and Error— preservation of issues—general objection at trial**

A general objection at trial did not preserve for appeal the issue of whether the trial court should have allowed a question that implied that defendant had committed theft in the past. Moreover, given the circumstances and the evidence, defendant did not show that he was prejudiced by the testimony.

Appeal by defendant from judgment entered 10 December 2008 by Judge Nathaniel J. Poovey in Gaston County Superior Court. Heard in the Court of Appeals 16 November 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Jess D. Mekeel, for the State.*

*James N. Freeman, Jr. for defendant-appellant.*

GEER, Judge.

## STATE v. MACK

[206 N.C. App. 512 (2010)]

Defendant William Michael Mack appeals from the judgment and commitment entered on (1) his convictions of second degree murder; misdemeanor hit and run failure to stop with resulting death; felony fleeing to elude arrest with motor vehicle; failure to stop at a red light; resisting, obstructing, or delaying a public officer; and failure to heed a light and siren; and (2) his guilty pleas to felony breaking and entering; felony larceny; conspiracy to commit felony breaking and entering and larceny; and driving while license revoked. On appeal, defendant focuses on his conviction of second degree murder.

Defendant primarily argues that the trial court erred in denying his motion to dismiss the charge of second degree murder on the grounds that the State failed to present sufficient evidence of malice. We hold that the trial court properly denied the motion to dismiss given the State's evidence that defendant, whose license had been revoked, drove extremely recklessly in order to elude arrest after breaking and entering and loading his car with stolen televisions.

### Facts

The State's evidence tended to show the following facts. On the night of 23 January 2007, defendant and his friends Joshua Earl Proby and Jerrick Bernard Boulware "were getting high" in Charlotte and decided to go to Shelby. As they were driving along Highway 29/74 in a borrowed Ford Focus, they passed a Bestway Rent-to-Own store. Defendant, who was driving, saw flat-screen televisions inside, commented that it "looked interesting," and asked Proby and Boulware if they wanted to "hit it." When Proby responded that he just wanted to "chill," defendant asked him if he was scared. Proby said "no" and told defendant to turn the car around.

Defendant went back to Bestway and pulled up in front of the store. Proby got out of the car, found a brick, and threw it through a window, shattering the glass. Proby and defendant then went inside and passed televisions out through the window to Boulware to put in the car. They loaded five flat-screen televisions in the trunk of the Focus and placed one 42-inch flat-screen television in the back seat. The men could not get the trunk of the car to shut. Nevertheless, the men got back into the car—defendant in the driver's seat, Proby in the passenger seat, and Boulware in the back seat with the television—and began traveling on Highway 29/74 back towards Charlotte.

At approximately 1:25 a.m., Officer Ross L. Hoffman of the Lowell Police Department was traveling westbound on Highway 29/74 when

he was notified by dispatch of "an alarm with a glass break" at the Bestway store. Anticipating that the robbers might have chosen to travel eastbound on Highway 29/74 after leaving Bestway, Officer Hoffman pulled into a left turn lane and prepared to make a U-turn to travel eastbound.

While waiting in the left turn lane, Officer Hoffman saw defendant's vehicle traveling eastbound in his direction at a speed greater than the posted speed limit of 50 miles per hour. Officer Hoffman activated his radar unit, which indicated that the car was going 65 miles per hour. As defendant's vehicle passed him, Officer Hoffman also noticed that the back windows were darkly tinted and the lid of the trunk was open.

After Officer Hoffman turned into the eastbound lane and pulled behind defendant's vehicle, he saw what appeared to be electronic equipment in the trunk of the vehicle. Defendant then quickly moved into a left turn lane and entered a shopping center even though the businesses were closed, which further heightened the officer's suspicions. As Officer Hoffman turned into the shopping center behind defendant, he activated his blue lights. Defendant immediately "stomped the accelerator and took off."

Defendant got back on the highway traveling eastbound with Officer Hoffman following in pursuit. At one point, defendant drove eastward in the westbound lane for approximately 500 to 700 feet before returning to the eastbound lane. Defendant, who was traveling between 90 and 95 miles per hour, also sped through a red traffic light without stopping. Defendant and Officer Hoffman passed through four more intersections during the chase, the traffic light at each being green. Proby testified that he told defendant several times to pull over so they could get out and run, but defendant said he could "do it."

Officer Hoffman alerted dispatch that he was in pursuit of a vehicle with subjects he believed to be involved in the reported Bestway breaking and entering. As Officer Hoffman and defendant approached the intersection of Wesleyan Drive and Wilkinson Boulevard, two officers of the Cramerton Police Department blocked the intersection with their vehicles to prevent any other vehicles from entering the intersection. After defendant and Officer Hoffman passed through that intersection, the officers followed Officer Hoffman to assist in the pursuit. Meanwhile, Officer Carl Moore of the Lowell Police Department positioned his patrol car at the intersection of Highway

29/74 and Lakewood Drive. Officer Moore blocked off traffic at the intersection and covered the two eastbound lanes of Highway 29/74 with tire deflation spikes.

As Officer Hoffman approached the intersection of Highway 29/74 and Lakewood Drive, he saw blue lights and he heard Officer Moore say over the radio, " 'I got spikes out.' " Officer Hoffman slowed his vehicle to prevent running over the spikes. Defendant, going at least 90 miles per hour, swerved to the left to avoid the spikes, jumped across the median, briefly drove eastward in the westbound lane, and "jumped back across the median and began a series of out-of-control maneuvers." The car "skidded to the right, went off the right side of the road, [came] back to the left side of the road, and went back to the right side of the road." It then collided with a 10-foot-high embankment on the right side of the road, spun so that the back of the car hit trees, and "rolled over on its top" while still spinning.

Officer Hoffman notified dispatch that the pursued car had crashed and rolled and that he was going to check the car for injured occupants. As Officer Hoffman approached, defendant crawled from underneath the opposite side of the car and began running east down Highway 29/74. Proby also escaped the car and began running up the embankment. The officers chased defendant on foot, but stopped pursuing him when defendant ran into the woods. A K-9 unit arrived and, within minutes, found defendant hiding behind a tree approximately 50 yards from the crash site. Defendant was then taken into custody.

At the crash site, officers found several car parts, CDs, and televisions scattered along the roadway. Because of the force of the collision, two of the televisions were compressed so tightly in the trunk that officers could not remove them. Officers noticed a black tennis shoe protruding out of the back window of the vehicle. Because the darkly tinted windows prevented the officers from seeing inside the vehicle, an officer broke the window, and they discovered Boulware pinned beneath the 42-inch television in the back seat. Boulware's body was upside down, with his head sticking out of the back window, "just barely missing" the ground.

Emergency responders from the Cramerton Volunteer Fire Department arrived shortly afterwards and removed the doors from the car. Unable to remove Boulware from the wreckage, the paramedics attached a lead to his leg to check for a pulse. Finding no pulse, the paramedics pronounced him dead. An autopsy determined

that Boulware died from head trauma—multiple brain hemorrhages "due to force of his head striking different objects in the car: The seat, the roof, a door, whatever happened to be close to his head wherever he was sitting."

Defendant was charged with second degree murder, felony hit and run failure to stop with personal injury, driving while license revoked, failure to heed a light or siren, resisting a public officer, felony fleeing to elude arrest with motor vehicle, failure to stop at a steady red light, felony breaking and entering, felony larceny, and felony conspiracy to commit felony breaking and entering and felony larceny. He pled guilty to the charges of misdemeanor driving while license revoked, felony breaking and entering, felony larceny, and felony conspiracy to commit breaking and entering and larceny.

Defendant proceeded to trial on the remaining charges. The jury found defendant guilty of second degree murder, misdemeanor hit and run failure to stop with resulting death, felony fleeing to elude arrest with motor vehicle, failure to stop at a steady red light, misdemeanor resisting a public officer, and failure to heed a light or siren. The court consolidated all the charges and sentenced defendant to a single presumptive-range term of 220 to 273 months imprisonment. Defendant timely appealed to this Court.

I

[1] On appeal, defendant first contends that the trial court erred in denying his motion to dismiss the charge of second degree murder. When a defendant moves to dismiss a charge based upon insufficiency of the evidence, "the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). The trial court considers the evidence in the light most favorable to the State, drawing all reasonable inferences and resolving any conflicts in the evidence in the State's favor. *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009).

The essential elements of second degree murder are "the (1) unlawful killing (2) of a human being (3) with malice, but without premeditation and deliberation." *State v. Vassey*, 154 N.C. App. 384, 390, 572 S.E.2d 248, 252 (2002), *disc. review denied*, 356 N.C. 692, 579 S.E.2d 96, *cert. denied*, 357 N.C. 469, 587 S.E.2d 339 (2003).

Defendant only challenges the sufficiency of the State's evidence as to the element of malice.

Our Supreme Court has emphasized that "[i]ntent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice." *State v. Brewer*, 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991). *See also State v. Lang*, 309 N.C. 512, 524-25, 308 S.E.2d 317, 323 (1983) ("While an intent to kill is not a necessary element of murder in the second degree, that crime does not exist in the absence of some intentional act sufficient to show malice and which proximately causes death."). In the context of an automobile accident, this requirement means that the State must prove "that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind." *State v. Rich*, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000).

Not all recklessness is sufficient to support a second degree murder charge. As our Supreme Court stated in *Rich*, "[t]he distinction between 'recklessness' indicative of [second degree] murder and 'recklessness' associated with manslaughter 'is one of degree rather than kind.' " *Id.* at 393, 527 S.E.2d at 303 (quoting *United States v. Fleming*, 739 F.2d 945, 948 (4th Cir. 1984), *cert. denied*, 469 U.S. 1193, 83 L. Ed. 2d 973, 105 S. Ct. 970 (1985)). *See also id.* at 395, 527 S.E.2d at 304 (observing that "the difference between the type of malice at issue in [a second degree murder case] and culpable negligence is the degree of recklessness that would support a finding of each").

" 'Standing alone, culpable negligence supports the submission of involuntary manslaughter.' " *Id.* (quoting *Brewer*, 328 N.C. at 523, 402 S.E.2d at 386). Our courts have defined "culpable negligence" sufficient to support an involuntary manslaughter charge as " 'such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.' " *State v. Wade*, 161 N.C. App. 686, 690, 589 S.E.2d 379, 382 (2003) (quoting *State v. Weston*, 273 N.C. 275, 280, 159 S.E.2d 883, 886 (1968)), *disc. review denied*, 358 N.C. 241, 594 S.E.2d 33 (2004).

With respect to "the level of recklessness required for second-degree murder," we must not confuse "such a high degree of recklessness with mere culpable negligence." *Rich*, 351 N.C. at 394, 527 S.E.2d at 303. "[W]hen that negligence is accompanied by 'an act which imports danger to another [and] is done so recklessly or wan-

tonly as to manifest depravity of mind and disregard of human life,' then it is sufficient to support a second-degree murder charge." *Id.* at 395-96, 527 S.E.2d at 304 (quoting *State v. Trott*, 190 N.C. 674, 679, 130 S.E. 627, 629 (1925)).

While most of the decisions upholding a second degree murder conviction arising out of a motor vehicle collision have involved the defendant's driving while impaired, this Court in *State v. Bethea*, 167 N.C. App. 215, 219, 605 S.E.2d 173, 177 (2004), *cert. denied*, 362 N.C. 88 (2007), rejected the argument made by defendant, in this case, that the State cannot prove the necessary level of recklessness without evidence of impairment: "[O]ur courts have not found driving under the influence to be the only evidence capable of proving malice." The Court explained that "[w]hile driving under the influence is certainly evidence sufficient to prove malice, defendant's actions in the instant case, motivated by an attempt to elude law enforcement by driving in an extremely dangerous manner, is an equally reckless and wanton act, which evidences 'a mind utterly without regard for human life and social duty and deliberately bent on mischief.' " *Id. (quoting State v. McBride*, 109 N.C. App. 64, 68, 425 S.E.2d 731, 733 (1993)). Thus, *Bethea* found the State presented sufficient evidence of malice when the defendant drove "in an extremely dangerous manner"—driving at speeds up to 100 miles per hour, speeding through a red light and stop signs, crossing into the oncoming traffic lane several times, and turning his lights off on dark, rural roads—and he did so for the unlawful purpose of eluding law enforcement. *Id.*

*Bethea* was followed in *State v. Lloyd*, 187 N.C. App. 174, 652 S.E.2d 299 (2007), *cert. denied*, 363 N.C. 586, 683 S.E.2d 214 (2009). In *Lloyd*, the Court also concluded that sufficient evidence of malice existed when the defendant, who knew his license was suspended, drove extremely dangerously in an effort to avoid arrest for having stolen the vehicle he was driving. *Id.* at 179-80, 652 S.E.2d at 302. As the police gave chase, the defendant drove 85 to 90 miles per hour, passed several cars in a no-passing zone despite oncoming traffic, forced a car off the road, and collided with a station wagon whose occupants subsequently died. *Id.* at 176, 652 S.E.2d at 300.

This case is virtually indistinguishable from *Bethea* and *Lloyd*. Just as in those two cases, defendant, whose license was revoked, drove extremely dangerously in order to evade arrest for breaking and entering and larceny. The State presented evidence that when an officer attempted to stop defendant, because of the stolen televisions

in his trunk, defendant fled, driving more than 90 miles per hour, passing through a red light without stopping, and traveling the wrong way on a highway—all with the vehicle's trunk lid open and with a passenger pinned by a large television and unable to exit the vehicle. Thus, under *Lloyd* and *Bethea*, the trial court properly denied defendant's motion to dismiss.

Defendant, however, argues that he lacked the necessary malice because Proby was the one who told him to flee and because all but one of the lights were green, there was no traffic on the road to be endangered, and he experienced no problems until he encountered the spike strips. This argument views the evidence in the light most favorable to defendant, rather than the State. Defendant was free to argue all this evidence to the jury, but it was up to the jury to decide what credibility and weight to give it. Because the State presented evidence of both a high level of recklessness combined with the intentional act of fleeing to elude arrest, the trial court properly allowed the charge of second degree murder to proceed to the jury.

II

[2] Defendant also contends that the trial court erred under Rule 404(b) of the Rules of Evidence by allowing Proby to answer the State's question about the identity of the people to whom Proby and defendant planned to sell the televisions. The following exchange occurred during Proby's direct examination:

Q. And what were you going to do with the TVS?

A. Sell them.

Q. Who were you going to sell them to?

A. We had numerous people we sold them to.

[DEFENSE COUNSEL]: Objection. Move to strike.

THE COURT: The objection is overruled. Motion to strike is denied.

Q. . . . Go ahead. Who were you going to sell them to?

A. We sell them to Jamaicans, Arabs. Mostly Arab.

Immediately afterward, the trial court sustained defendant's objection to the State's asking Proby *how many times* he and defendant had sold stolen televisions in the past.

The State's question, defendant now argues, was "clearly irrelevant," and Proby's response left a "highly inflammatory and unduly prejudicial impression before the jury that [defendant] must have committed robberies on a regular basis." Defendant argues the testimony allowed the State to "paint [defendant] with a broad brush as a 'bad person' who committed numerous robberies in the past, as evidenced by the people he sold these stolen TVS to."

We question whether defendant's objection at trial was sufficient to preserve this issue for review. " '[A] general objection, if overruled, is ordinarily not effective on appeal.' " *State v. White,* 104 N.C. App. 165, 170, 408 S.E.2d 871, 874 (1991) (quoting *State v. Hamilton,* 77 N.C. App. 506, 509, 335 S.E.2d 506, 508 (1985), *disc. review denied,* 315 N.C. 593, 341 S.E.2d 33 (1986)). " 'This rule serves to facilitate proper rulings and to enable opposing counsel to take proper corrective measures to avoid retrial.' " *Id.,* 408 S.E.2d at 874-75 (quoting *State v. Catoe,* 78 N.C. App. 167, 168, 336 S.E.2d 691, 692 (1985), *disc. review denied,* 316 N.C. 380, 344 S.E.2d 1 (1986)).

Under Rule 10(b)(1) of the Rules of Appellate Procedure, "to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, *stating the specific grounds* for the ruling the party desired the court to make if the specific grounds were not apparent from the context." (Emphasis added.)[1] Here, it is not readily apparent from the context whether defendant was objecting on Rule 404(b) grounds or on some other basis such as Proby's answer being non-responsive to the question.

Even assuming, however, that the issue was preserved, defendant has not shown that he was prejudiced by this testimony. Defendant pled guilty to breaking and entering, larceny, and conspiracy. There is no dispute that the car was packed with stolen televisions. Nor is there any real dispute as to the dangerousness of defendant's driving during the police chase. Given the larceny of numerous televisions, defendant's being an instigator of the theft, the circumstances of the chase, and the fact that defendant's passenger died as a result of the force of the impact during the crash that ended the chase, there is no "reasonable possibility that . . . a different result would have been reached" by the jury absent the suggestion that defendant and Proby had previously sold stolen televisions. N.C. Gen. Stat. § 15A-1443(a) (2009). *See State*

---

1. Under the recently amended Rules of Appellate Procedure, the former Rule 10(b) is now Rule 10(a). Because defendant filed notice of appeal prior to 1 October 2009, the effective date of the amended rules, we refer to Rule 10(b).

*v. McDonald,* 130 N.C. App. 263, 267-68, 502 S.E.2d 409, 413 (1998) (holding that even if irrelevant, admission of evidence of prior break-in was harmless when there was undisputed evidence that defendant brandished handgun and threatened to shoot victim if she did not move away from her door and defendant took victim's money).

No error.

Chief Judge MARTIN and Judge ELMORE concur.