STATE OF NORTH CAROLINA v. DEMARIO JAQUINTA ROLLINS

No. COA11-969

(Filed 15 May 2012)

**1. Evidence—prior crimes or bad acts—admitted for acceptable purpose—relevant—not unduly prejudicial**

The trial court did not err in a second-degree murder case arising out of a vehicular accident by admitting evidence of defendant's shoplifting, citations for driving without a license, and actions immediately after the collision. The evidence was relevant for purposes other than to show that defendant had the propensity for the type of conduct for which he was being tried, the purposes were relevant to an issue material to the pending case, and the probative value of the evidence substantially outweighed the danger of unfair prejudice pursuant to Rule 403 of the Rules of Evidence.

**2. Evidence—police officer testimony—legal conclusions— observations—no different outcome**

The trial court did not commit plain error in a second-degree murder case arising out of a vehicular accident by allowing police officers to testify regarding their legal conclusions that defendant committed the criminal offenses of felony speeding to elude an officer, careless and reckless driving, and speeding over 15 miles an hour above the speed limit. The evidence was admissible under *State v. Anthony*, 354 N.C. 372, as the officers were not interpreting the law for the jury, but rather were testifying regarding their observations in order to explain why they pursued defendant in a high-speed chase. Furthermore, even if the officers' testimony had been excluded, the jury probably would not have reached a different verdict.

**3. Homicide—second-degree murder—malice—sufficient evidence**

The trial court did not err in a second-degree murder case by failing to dismiss the charge for insufficient evidence. The State presented sufficient evidence of all the elements of the crime, including malice.

**4. Jury—instructions—duty to reach a verdict—not coercive**

Although the trial court's instruction regarding the jury's duty to reach a verdict varied from the pattern jury instruction, when viewed in context, the instruction did not mislead the jury and was not, therefore, coercive of the jury's verdict.

Appeal by defendant from judgment entered 6 July 2010 by Judge Calvin E. Murphy in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 December 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General R. Marcus Lodge, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

GEER, Judge.

Defendant Demario Jaquinta Rollins appeals from his conviction of second degree murder. Defendant, who had no license, collided with the victim's car during the course of a high speed chase by police. On appeal, defendant primarily argues that the State pre-

sented insufficient evidence of malice and, therefore, defendant could not be convicted of second degree murder. We find the evidence in this case materially indistinguishable from the evidence found sufficient in *State v. Mack*, 206 N.C. App. 512, 697 S.E.2d 490, *disc. review denied*, 364 N.C. 608, 704 S.E.2d 276 (2010), and *State v. Lloyd*, 187 N.C. App. 174, 652 S.E.2d 299 (2007). The trial court, therefore, properly denied defendant's motion to dismiss the second degree murder charge.

## Facts

The State's evidence at trial tended to show the following facts. Defendant has never had a driver's license and twice—on 1 May 2009 and 19 May 2009—was cited for operating a motor vehicle without a license. Both citations were still pending on 22 May 2009.

On the afternoon of 22 May 2009, defendant and four women, Toni Jackson, Somona Johnson, Jalyssa Morris, and Jenesia Craig, decided to drive to Concord Mills Mall in defendant's Buick in order to shoplift. Defendant drove despite his lack of a license. Once at the mall, the group split up to shoplift, mostly taking clothes. They all left the mall, but then decided to go back to steal tennis shoes.

A manager at Finish Line shoe store saw Ms. Craig put a pair of shoes in a shopping bag. When confronted, she ran from the store, and a store employee called the police. Ms. Jackson drove defendant's car through the mall parking lot to pick up Ms. Craig.

Officer Joel Patterson of the Concord Police Department was sitting in his patrol car at the mall when he received a call about a larceny in progress with a description of the woman involved. Officer Patterson drove around the mall parking lot until he saw a woman matching that description get into the backseat of a Buick later identified as defendant's car. The Buick pulled out onto a road on the outside of the mall parking lot, and Officer Patterson immediately pulled behind the Buick, activating his blue lights and siren. Officer Curtis Anderson of the Concord Police Department also responded and started driving behind Officer Patterson.

Ms. Jackson wanted to stop when the police pulled up behind her because she also did not have a driver's license. She slowed down, and Officer Patterson thought "[i]t appeared that they were going to stop the vehicle." However, without the car ever actually stopping, defendant moved from the back seat to the front and took over driving.

Once defendant had control of the car, he immediately acceler-ated and made a sharp left hand turn onto Odell School Road and into the oncoming lane of traffic, although there were no cars in that lane. He continued to drive on the wrong side of the double yellow line in order to pass two cars that were in the right lane.

Defendant and the officers continued down Odell School Road toward Mallard Creek Road. Defendant was driving between 60 and 70 miles per hour in an area with a 45 mile per hour speed limit. Odell School Road has one lane traveling in each direction. When defendant wanted to pass cars heading more slowly in the same direction that he was, he used a turning lane designed for entrance into a sports complex.

At the intersection of Odell School Road and Mallard Creek Road, cars were stopped at a stop sign. To avoid the stop sign, defendant drove diagonally right across a mowed corn field, went through a ditch, and then turned right onto Mallard Creek Road. The police offi-cers followed defendant, but used the shoulder of the road to pass the cars stopped at the stop sign.

Defendant then accelerated to 70 to 80 miles per hour, passing other cars stopped at a red light by using the left hand turn lane. At that point, Officer Patterson testified that he estimated defendant's vehicle was travelling at approximately 80 miles per hour. Defendant dropped off the right side of the road, jerked hard to the left, crossed the double yellow line, and went straight into oncoming traffic at the crest of a hill. Defendant's Buick crashed into another vehicle travel-ing in the opposite lane of travel. Defendant never hit his brakes.

An accident reconstruction expert, calculating the speed at impact conservatively, found the minimum speed for defendant's vehicle at the time of impact was 66 miles per hour. The posted speed limit is 45 miles per hour on that stretch of road.

Ms. Docia Barber, an 84-year-old widow on her way to pick up a prescription at Walgreens, was driving the other car—she was com-pletely in her lane, traveling only about 25 or 30 miles per hour. The impact on Ms. Barber's vehicle, as described by the driver of the car immediately behind Ms. Barber (Jackie Stroman), was "so hard like it exploded . . . all I could see was debris." Mr. Stroman swerved as defend-ant's Buick pushed Ms. Barber's car back toward Mr. Stroman's vehicle, but Mr. Stroman was unable to avoid colliding with Ms. Barber.

After colliding with Ms. Barber's car, defendant's Buick hit an embankment. Officer Patterson parked behind the Buick, and all of

the Buick's doors opened. When Officer Patterson walked up to the vehicle, defendant was trying to get out from under the steering wheel and the crumbled dashboard. Although the passenger in the front middle seat was only semi-conscious, defendant elbowed her repeatedly until he was able to drag himself over her and out the back passenger door, leaving the female passengers in the car. At that point, defendant was arrested.

The fire department had to cut the roof off of Ms. Barber's vehicle to reach her. Ms. Barber died at the scene after suffering a broken neck, numerous broken ribs, a broken left arm, a broken right thigh, broken lower legs, and a broken right ankle. Mr. Stroman was taken to the hospital, examined, and released. All the occupants of defendant's Buick survived.

Defendant was indicted for second degree murder. At trial, defendant conceded he was guilty of manslaughter but argued that he was not guilty of second degree murder. After the jury found him guilty of second degree murder, the trial court sentenced him to a presumptive-range term of 180 to 225 months imprisonment. Defendant timely appealed to this Court.

I

[1] Defendant first contends that the trial court erred under Rule 404(b) of the North Carolina Rules of Evidence by admitting various pieces of evidence of bad acts he committed. Long ago, our Supreme Court established that "Rule 404(b) state[s] a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

We apply a three-step test in determining whether evidence was properly admitted under Rule 404(b). "First, is the evidence relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried? Second, is that purpose relevant to an issue material to the pending case? Third, is the probative value of the evidence substantially outweighed by the danger of unfair prejudice pursuant to Rule 403?" *State v. Foust*, 220 N.C. App. 63, 69, 724 S.E.2d 154, 159 (2012). With respect to the first and second prongs, we review questions of relevance *de novo*

although we give great deference to the trial court's relevancy determinations. *State v. Houseright,* 220 N.C. App. 495, 499, 725 S.E.2d 445, 448 (2012).

A.  Evidence of Shoplifting

Defendant first contends the trial court committed plain error in admitting evidence regarding the details of the shoplifting expedition that took place immediately prior to the police chase that ended in the collision. We disagree.

It is well established that evidence is admissible under Rule 404(b) when the other bad acts are part of the chain of circumstances leading up to the event at issue or when necessary "in order to provide a complete picture for the jury." *State v. Madures,* 197 N.C. App. 682, 688, 678 S.E.2d 361, 365 (2009). *See also State v. White,* 340 N.C. 264, 284, 457 S.E.2d 841, 853 (1995) ("Evidence of other crimes committed by a defendant may be admissible under Rule 404(b) if it establishes the chain of circumstances or context of the charged crime. Such evidence is admissible if the evidence of other crimes serves to enhance the natural development of the facts or is necessary to complete the story of the charged crime for the jury." (internal citation omitted)).

Here, the fact that defendant was part of a shoplifting group targeting the mall for clothes and sneakers helped explained why defendant took over driving from Ms. Jackson, who wanted to stop; why he did not want police to search the vehicle and, therefore, why there was a police chase; and, ultimately, why he was attempting so aggressively to evade the officers chasing him. Without information about defendant's participation in the shoplifting expedition, the jury would not have a complete picture of what occurred on 22 May 2009 and why.

Our appellate courts have previously upheld the admission of similar evidence. In *State v. Bray,* 321 N.C. 663, 675, 365 S.E.2d 571, 578-79 (1988), the Supreme Court held that in a trial for the shooting of a highway patrol trooper, the trial court properly admitted evidence of the defendant's escape from jail and everything that happened from the time of the escape through the shooting because the defendant's desire to do whatever necessary to avoid capture gave him a motive for killing the trooper. The Court explained: "The chain of events from the time of [defendant and another individual's] escape demonstrates their attempt to avoid apprehension: they assaulted the jailer with a pipe to escape from jail; they broke into an Arkansas home and stole a rifle and a truck; they drove to North

Carolina; they stole a South Carolina license plate for the truck; they borrowed a pistol; they shot a state trooper, stole his revolver, then fled the scene; they broke into another home, where they stole another gun." *Id.*

Just as the evidence in *Bray* of an escape, an assault, and larcenies explained why defendant shot the trooper, the voluminous and organized nature of the shoplifting in this case explained why defendant was driving in the manner that he was for purposes of the malice requirement of second degree murder. *See Mack*, 206 N.C. App. at 518-19, 697 S.E.2d at 494-95 (finding sufficient evidence of malice where defendant, whose license was revoked, drove more than 90 miles per hour, passed through a red light without stopping, and traveled the wrong way on a highway in order to evade arrest for breaking and entering and larceny); *Lloyd*, 187 N.C. App. at 176, 179-80, 652 S.E.2d at 300, 301 (finding sufficient evidence of malice for second degree murder conviction when defendant, who knew his license was suspended, drove extremely dangerously in an effort to avoid arrest for having stolen the vehicle he was driving, including driving 85 to 90 miles per hour, passing several cars in a no-passing zone despite oncoming traffic, and forcing a car off the road).

Although defendant argues that the specific details of the shoplifting should have been excluded, those details are important since a jury would not be able to understand why a person who had shoplifted a single shirt or DVD would be driving at speeds of up to 80 miles per hour in order to avoid arrest. We hold that the evidence regarding the shoplifting was relevant for a material purpose other than propensity and that this probative value was not outweighed by any unfair prejudice to defendant. The trial court did not, therefore, commit plain error in admitting the evidence of shoplifting.

B. Defendant's Citations for Driving Without a License

Defendant next contends that the trial court erred by admitting into evidence "the bare fact defendant received two criminal charges for no operator's license in May 2009" and by instructing the jury that it could consider that evidence to prove malice. The State presented evidence that defendant received two citations for driving without a license in May 2009, including one only three days before the crash resulting in Ms. Barber's death.

These citations—showing that defendant had been repeatedly directed that driving without a license was unlawful but persisted in doing so—were relevant to malice. This Court held in *Lloyd*, *id.* at

178, 652 S.E.2d at 301 (internal citations omitted) (emphasis added): "Whether defendant knew that he was driving with a suspended license tends to show that he was acting recklessly, which in turn tends to show malice. Malice is an essential element of second degree murder. *Thus, evidence that defendant was knowingly operating a motor vehicle without a valid license was relevant to the crime he was being tried for, and defendant's contention is without merit.*"

Defendant, however, cites *State v. Wilkerson*, 148 N.C. App. 310, 318, 559 S.E.2d 5, 10 (Wynn, J., dissenting), *rev'd for reasons in dissenting opinion*, 356 N.C. 418, 571 S.E.2d 583 (2002). Judge Wynn's dissent, adopted by the Supreme Court, concluded that the trial court erred, under Rule 404(b), in admitting "the bare fact of defendant's prior convictions" for drug offenses. *Id.* at 329, 559 S.E.2d at 17.

Judge Wynn reasoned that Rule 404(b) permits evidence of other crimes in order to prove purposes other than propensity, such as those enumerated in Rule 404(b), and a bare conviction, without the underlying facts, cannot in most cases prove any of the enumerated purposes. *Id.* at 319, 559 S.E.2d at 11. He noted, however, that a conviction for a traffic-related offense may "show the malice necessary to support a second-degree murder conviction," because it was "the *underlying evidence* that showed the necessary malice, not the fact that a trial court convicted the defendant." *Id.* at 325, 559 S.E.2d at 14.

In *State v. Rich*, 351 N.C. 386, 400, 527 S.E.2d 299, 307 (2000), one of the cases cited by Judge Wynn, the Supreme Court stressed that the defendant's prior speeding convictions were not offered to show that he was speeding at the time of collision, but rather "show that defendant knew and acted with a total disregard of the consequences, which is relevant to show malice," a proper purpose under Rule 404(b). Consistent with this emphasis on a defendant's knowledge—and not the bare fact of a prior conviction—this Court has held that pending charges as well as prior convictions can show the necessary knowledge to make the charges "admissible under Rule 404(b) as evidence of malice to support a second degree murder charge." *State v. McAllister*, 138 N.C. App. 252, 259, 530 S.E.2d 859, 864 (2000).

Thus, because *Lloyd* establishes that defendant's citations are relevant to malice for purposes of second degree murder, the analysis in *Wilkerson* does not apply. The trial court did not, therefore, err in admitting the evidence of defendant's citations for driving without a license.

STATE v. ROLLINS

[220 N.C. App. 443 (2012)]

## C. Defendant's Post-Collision Actions

Finally, defendant contends that Officer Patterson should not have been allowed to testify about defendant's actions immediately after the collision. According to Officer Patterson, when he ordered everyone in the Buick to put their hands up,

> the driver was elbowing the middle passenger in the neck and face area, hitting her several times, until her body finally laid over the front seat to the back seat. The driver then drug himself out from underneath the dashboard, drug himself over the middle passenger's body out the back rear passenger door.

In continuing to relate what he witnessed, Officer Patterson characterized defendant's actions as "hitting" the semi-conscious woman in the middle seat and reported that "[h]er head was snapping back every time he hit her." Officer Patterson then described defendant as dragging himself over the woman's entire body to get out the rear passenger door of the vehicle and away from Officer Patterson.

Defendant claims this testimony was inadmissible evidence that he assaulted a female. However, Officer Patterson never testified that defendant "assaulted" the female passenger. Instead, he just described what he personally witnessed when he approached defendant's vehicle after the collision.

As for the evidence's admissibility under Rule 404(b), we note that defendant, as support for his contention that the State failed to prove malice, has argued that "the evidence about defendant's conduct after the accident shows lack of malice. Thus, defendant exited the wrecked Buick through an undamaged door, did not try to flee, promptly surrendered to police, allowed himself to be handcuffed, and waited patiently at the scene." The State's evidence—suggesting defendant was continuing to try to escape regardless of the collision and in callous disregard for the condition of his passengers—supports a finding of malice. See State v. Wilkerson, 295 N.C. 559, 581, 247 S.E.2d 905, 917 (1978) (holding that "any act evidencing wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person is sufficient to supply the malice necessary for second degree murder" (internal quotation marks omitted)). The trial court, therefore, properly admitted Officer Patterson's testimony about defendant's post-collision actions.

II

**[2]** Defendant next argues that the trial court committed plain error by allowing Officers Patterson and Anderson to testify to legal conclusions regarding whether defendant committed the criminal offenses of felony speeding to elude an officer, careless and reckless driving, and speeding over 15 miles an hour above the speed limit. "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

During the State's examination of Officer Patterson, he testified that the officers were not allowed to engage in a car pursuit or continue a pursuit unless they observed conduct that they believed to be a felony. According to Officer Patterson, he believed that the requirements for felony speeding to elude arrest had been met because defendant had, while fleeing the police, engaged in the crime of careless and reckless driving and the crime of speeding over 15 miles per hour above the speed limit. Officer Anderson similarly testified that "the manner in which he was driving became a felony insofar as felony speed to elude. His driving became very fast and it was reckless." He also testified that defendant was going 25 miles per hour over the speed limit.

Our Supreme Court has previously recognized that some testimony of officers regarding violations of the law may constitute "a shorthand statement of fact rather than . . . a legal term of art or an opinion as to the legal standard the jury should apply," rendering the testimony admissible. *State v. Anthony*, 354 N.C. 372, 408, 555 S.E.2d 557, 581 (2001). In *Anthony*, the Supreme Court found no error when the officer testified that the defendant had violated a restraining order and that the officer, therefore, had authority to arrest him. The Court reasoned that the officer, based on his training and experience, "described the evidence available to him at the time; paraphrased the statute in neutral terms; then gave the opinion that under the statute, the facts described to him by [the victim's father] provided probable cause to arrest defendant." *Id.* The Court concluded that "[i]n so doing, [the officer] was not providing an interpretation of the law," but instead "was offering an explanation of his actions." *Id.*, 555 S.E.2d at 581-82.

Likewise, here, the officers were not interpreting the law for the jury, but rather were testifying regarding their observations in order

to explain why they pursued defendant in a high-speed chase. We hold that this testimony was admissible under *Anthony.*

Regardless, we cannot conclude that even if the officers' testimony regarding the potential crimes had been excluded, the jury would probably have reached a different verdict. The same officers who testified regarding the potential felony fleeing to elude arrest and traffic crimes also testified that they did not believe defendant was driving "so inherently dangerous, that somebody's going to get killed and he doesn't care." In other words, as defendant has vigorously argued, these officers testified contrary to the State's position regarding malice for purposes of second degree murder. Given the officers' entire testimony, we cannot conclude that the jury probably would have reached a different verdict in the absence of the challenged testimony.

## III

[3] Defendant next contends that the trial court should have granted his motion to dismiss the second degree murder charge because of insufficient evidence of malice.[1] "This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial ·evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Lowry*, 198 N.C. App. 457, 465, 679 S.E.2d 865, 870 (2009) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002). "When reviewing a motion to dismiss based on insufficiency of the evidence, this Court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Bullock*, 178 N.C. App. 460, 466, 631 S.E.2d 868, 873 (2006).

Here, viewing the evidence in the light most favorable to the State, a reasonable juror could find the following facts. Defendant knowingly was driving without a license even though he had been cited twice for that offense in the prior three weeks. When another

---

1. Defendant also claims that his conviction violates the Fourteenth Amendment. Because he did not raise this constitutional argument in the trial court, we will not address it for the first time on appeal. *See State v. Gobal*, 186 N.C. App. 308, 320, 651 S.E.2d 279, 287 (2007), *aff'd per curiam*, 362 N.C. 342, 661 S.E.2d 732 (2008).

driver wanted to pull over for the police, defendant took control of the vehicle by climbing over the back seat without allowing the vehicle to come to a stop. He was attempting to evade the police because of a large volume of shoplifted items in his vehicle.

While traveling at a high rate of speed well in excess of the speed limit, defendant crossed a yellow line in order to pass cars, twice passed vehicles using a dedicated turn lane, drove through a mowed corn field and a ditch to get around cars stopped at a stop sign, and again crossed the center line to collide head-on with another vehicle while traveling 66 miles per hour and without having applied his brakes. Then, in a further attempt to avoid arrest, defendant repeatedly struck an apparently semi-conscious passenger in his efforts to get out of the vehicle and away from the police.

These facts are materially indistinguishable from those in *Mack* and *Lloyd* and, therefore, those decisions control. In *Mack*, we affirmed the denial of a motion to dismiss for second degree murder where "defendant, whose license was revoked, drove extremely dangerously in order to evade arrest for breaking and entering and larceny. The State presented evidence that when an officer attempted to stop defendant, because of the stolen televisions in his trunk, defendant fled, driving more than 90 miles per hour, passing through a red light without stopping, and traveling the wrong way on a highway . . . ." 206 N.C. App. at 518, 697 S.E.2d at 494-95.

In *Lloyd*, the defendant "was knowingly operating a motor vehicle without a valid license." 187 N.C. App. at 178, 652 S.E.2d at 301. He stole a van, was chased by the police, drove 85 to 90 miles per hour, and passed several cars in a no-passing zone where there was oncoming traffic. *Id.* at 176, 652 S.E.2d at 300.

Defendant does not address *Mack* or *Lloyd* in his initial brief, but rather only very briefly discusses them in his reply brief. He attempts to distinguish the two cases by pointing to the testimony of Officers Patterson and Anderson, which he summarizes as showing

> defendant had control over his vehicle, handled his car well, never ran a red light, maintained good lane control, and never came close to a "near miss" or "close call" until the moment of impact. Further, both officers testified defendant did not create a clear and unreasonable danger to others, did not drive dangerously in excess of safe speeds, did not drive in a manner inconsistent with due regard for the safety of others, and did not present a risk to the public. Still further, both officers tes-

tified they themselves never believed defendant's driving was so reckless as to threaten public safety, was inherently dangerous, was a clear and imminent danger to others, or would result in a fatality.

Defendant also cites Officer Patterson's testimony that officers must abandon pursuit "if there is a clear and unreasonable danger to the officer or other vehicles" and that Officer Patterson did not discontinue pursuit in this case. Officer Anderson testified similarly. Defendant claims that the officers' testimony establishes that he acted without malice.

This purported distinction of *Mack* and *Lloyd* overlooks our standard of review. Defendant has, at best, pointed to inconsistencies in the State's evidence. It is, however, well established that "[c]ontradictions and discrepancies, even in the State's evidence, do not warrant the allowance of a motion to dismiss, these being for the jury to resolve." *State v. Curry*, 288 N.C. 660, 669, 220 S.E.2d 545, 552 (1975). Here, after the officers gave the testimony on which defendant relies, the State elicited evidence that Ms. Barber's family had filed a still pending lawsuit against the officers and the City of Concord, alleging that the officers had violated their department's pursuit policy. " 'It is elementary that the jury may believe all, none, or only part of a witness' testimony[.]' " *State v. Barr*, 218 N.C. App. 329, 340, 721 S.E.2d 395, 402 (2012) (quoting *State v. Miller*, 26 N.C. App. 440, 443, 216 S.E.2d 160, 162, *aff'd*, 289 N.C. 1, 220 S.E.2d 572 (1975)). Here, the jury reasonably could have chosen to credit the officers' and other witnesses' testimony about what defendant actually did while being chased, could have found that this conduct was sufficiently reckless to establish malice, and could have determined that the officers' claims that defendant presented no clear danger to others were self-serving and not credible.

When we view the evidence in the light most favorable to the State, the facts are virtually identical to those in *Mack* and *Lloyd*. Based on those decisions, the State presented sufficient evidence of malice, and the trial court properly denied the motion to dismiss.

IV

[4] Defendant lastly contends that the trial court's instruction regarding the jury's duty to reach a verdict varied from the pattern jury instruction in a manner that "unconstitutionally coerced the guilty verdict." The pattern instruction reads: "All twelve of you must

agree to your verdict. You cannot reach a verdict by majority vote. When you have agreed upon a unanimous verdict(s) (as to each charge) your foreperson should so indicate on the verdict form(s)." N.C.P.I.—Crim. 101.35 (2011). This pattern instruction is based upon N.C. Gen. Stat. § 15A-1235(a) (2011), which states: "Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty."

Here, the trial court instructed: "You must be unanimous in your decision. In other words, all twelve jurors must agree. When you have agreed upon a unanimous verdict, your foreperson may so indicate on the verdict form that will be provided to you." Defendant claims that telling the jurors that they had to agree—rather than that they had to agree to a verdict—caused the jurors to "erroneously construe" the charge to be "a mandatory instruction that a verdict must be reached."

Defendant bases his argument on a quote from *State v. Price*, 326 N.C. 56, 388 S.E.2d 84, *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7, 111 S. Ct. 29 (1990). In *Price*, after being told by the jury foreman that the jury was hung during the death penalty deliberation phase, the trial court instructed the jury that " 'I am going to ask that you resume your deliberations in an attempt to return a recommendation. I have already instructed you that your recommendation must be unanimous, that is, each of you must agree on the recommendation.' " *Id*. at 90, 388 S.E.2d at 104. Although the Court found no error in this instruction, the Court stressed that "in telling a jury that its recommendation as to punishment must be unanimous, the trial court must be vigilant to inform the jurors that whatever recommendation they *do* make must be unanimous and not to imply that a recommendation must be reached." *Id*. at 92, 388 S.E.2d at 105.

While the instruction at issue, standing alone, could be construed as implying that the jury was required to reach an agreement, we do not review a particular jury instruction in isolation. Instead,

> "[t]he charge of the court must be read as a whole . . . , in the same connected way that the judge is supposed to have intended it and the jury to have considered it . . . . It will be construed contextually, and isolated portions will not be held prejudicial when the charge as [a] whole is correct. If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal."

*State v. Hooks*, 353 N.C. 629, 634, 548 S.E.2d 501, 505 (2001) (quoting *Rich*, 351 N.C. at 393-94, 527 S.E.2d at 303).

Looking at the instructions given in this case as a whole, we cannot agree that the jury instruction was coercive. The language that "all 12 jurors must agree" comes directly from the statute. The sentences surrounding the language at issue both referenced unanimity in connection with an actual decision or verdict. Later, the trial court reiterated what the jury should do "[w]hen you have unanimously *agreed upon a verdict* and are ready to announce it . . . ." (Emphasis added.) Although the pattern instruction more carefully instructs the jury, we hold that the trial court's instruction, in this case, when viewed in context did not mislead the jury and was not, therefore, coercive of the jury's verdict.

No error.

Judges ROBERT C. HUNTER and ROBERT N. HUNTER, JR. concur.