BERGER, Judge.
 

 On October 18, 2016, a Davidson County jury found Quincy Jerome Solomon ("Defendant") guilty of second degree murder and fleeing to elude arrest. Defendant appeals contending the trial court erred by excluding testimony regarding Defendant's purported diagnosed mental disorders. We disagree.
 

 *427
 

 Factual and Procedural Background
 

 On the night of May 28, 2014, Defendant transported a group of his friends in his Mitsubishi Eclipse from Thomasville, North Carolina to a friend's home in High Point, North Carolina. Defendant was never issued a driver's license, and his privilege to drive was suspended in October 2013 due to a conviction for driving by a person less than twenty-one years old after consuming alcohol or drugs. Defendant's vehicle had no insurance, registration, or license plate.
 

 After staying in Thomasville for approximately one hour, Defendant attempted to return to High Point with Keith Sheffield ("the victim") sitting in the front-passenger seat and Justin Walker ("Justin") sitting on the rear floor as there were no seats in the back of Defendant's vehicle. At that time, the Thomasville Police Department had established a license check station on National Highway. Around 1:00 a.m. on May 29, 2014, Sergeant Jason Annas observed Defendant's vehicle travel towards the license check station, crest over a hill, and make an illegal U-turn. Defendant traveled away from the license check station at a high rate of speed with a rear taillight out.
 

 Officer Dustin Gallimore activated the lights and siren on his marked patrol car and pursued Defendant's vehicle heading northeast on National Highway. Officer Gallimore's patrol car reached speeds in excess of 100 miles per hour in a forty-five mile-per-hour zone in his effort to apprehend Defendant. During the seven-mile pursuit, Defendant: (1) drove his vehicle between fifteen and fifty-five miles per hour over the speed limit while driving through multiple residential areas where he passed both pedestrians and vehicles parked on narrow streets; (2) drove into a private driveway, turned around, and then drove towards the oncoming officer's patrol car while revving his engine; (3) drove left of the center lane and straddled the middle double yellow lines; (4) lost control of his vehicle on a curve in the road and went off of the road; (5) traveled at speeds of seventy to eighty miles per hour; (6) avoided stop sticks deployed by law enforcement; and (7) failed to stop at five stop signs during the pursuit. Defendant ultimately lost control of the vehicle and crashed into a ravine.
 

 Officers arrived on scene shortly thereafter to find the vehicle upside down in the ravine, Justin standing behind the vehicle with a laceration to his arm, and Defendant on the ground holding the victim's head in his hands. Defendant told officers on scene, "This is all my fault. They were telling me to slow down and stop. I did not. I was driving. These other guys did not have anything to do with this. They were telling me to slow down and stop." The victim died on May 31, 2014 from injuries sustained in the crash.
 

 On June 2, 2014, Defendant was indicted by the Davidson County Grand Jury for second degree murder, speeding to elude arrest, and attempted assault with a deadly weapon on a law enforcement officer. The charge of attempted assault with a deadly weapon on a law enforcement officer was dismissed.
 

 At trial, Defendant attempted to testify to his cognitive impairments and behavioral problems on direct examination. The State objected to Defendant's testimony, arguing that Defendant had failed to provide notice of an insanity or diminished capacity defense, and he had failed to provide an expert witness or medical documentation for any of the purported conditions. On
 
 voir dire
 
 , Defendant testified that he suffered from several mental disorder including Attention Deficit Disorder ("ADD"), Attention Deficit Hyperactivity Disorder ("ADHD"), Pediatric Bipolar Disorder ("PBD"), and Oppositional Defiant Disorder ("ODD"). Defendant's counsel stated they were not offering the testimony as a defense, but instead "offering it so the jury would be aware of [Defendant's] condition and state of mind."
 

 The trial court determined that lay testimony from Defendant regarding his various purported mental disorders would not be allowed because it was not relevant pursuant to Rule 401 of the North Carolina Rules of Evidence. However, the trial court did allow Defendant to testify to his general behavioral issues and academic performance.
 

 On October 18, 2016, the jury found Defendant guilty of second degree murder and fleeing to elude arrest. Defendant was sentenced
 
 *428
 
 to 162 to 207 months in prison for the second degree murder offense, and the trial court arrested judgment on the fleeing to elude arrest offense. Defendant gave notice of appeal in open court upon entry of final judgment.
 

 Analysis
 

 Defendant contends on appeal that the trial court erred by excluding Defendant's testimony concerning his purported medical diagnoses as irrelevant under N.C. Gen Stat. § 8C-401, Rule 401. We disagree.
 

 Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the "abuse of discretion" standard which applies to rulings made pursuant to Rule 403.
 
 [1]
 

 Dunn v. Custer
 
 ,
 
 162 N.C. App. 259
 
 , 266,
 
 591 S.E.2d 11
 
 , 17 (2004) (citations and quotation marks omitted).
 

 " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-401, Rule 401 (2017). "The admissibility of evidence is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove any fact that is of consequence in the case being litigated."
 
 State v. Griffin
 
 ,
 
 136 N.C. App. 531
 
 , 550,
 
 525 S.E.2d 793
 
 , 806 (citations and quotation marks omitted),
 
 appeal dismissed and disc. review denied
 
 ,
 
 351 N.C. 644
 
 ,
 
 543 S.E.2d 877
 
 (2000).
 

 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.
 

 N.C. Gen. Stat. § 8C-701, Rule 701 (2017).
 

 Defendant contends that informing the jury of his medical diagnoses would have been "helpful to [give a] clear understanding of his testimony or the determination of a fact in issue."
 
 See
 

 id
 
 . Specifically, Defendant argues it was essential that the jury hear evidence of Defendant's inability to comprehend the gravity of his actions and the danger that his conduct presented to the victim because of his purported medical diagnoses.
 

 Defendant attempted to offer specific medical diagnoses through his own testimony to lessen his culpability or explain his conduct without any accompanying documentation, foundation, or expert testimony. Defendant's testimony regarding the relationship between his medical diagnoses and his criminal conduct was not relevant without additional foundation or support. Such evidence would have required a tendered expert witness to put forth testimony that complies with the rules of evidence. Without a proper foundation from an expert witness and accompanying medical documentation, Defendant's testimony would not make a fact of consequence more or less probable from its admittance.
 
 See
 
 N.C. Gen. Stat. § 8C-401, Rule 401;
 
 Griffin
 
 ,
 
 136 N.C. App. at 550
 
 ,
 
 525 S.E.2d at 806
 
 .
 

 Accordingly, we find no error in the exclusion of Defendant's opinion testimony regarding his medical conditions and its impact on his conduct as it was more confusing than helpful to the jury without further supporting evidence demonstrating its relevance.
 

 Assuming,
 
 arguendo
 
 , the trial court improperly excluded Defendant's testimony under Rule 401, the purported error was not prejudicial against Defendant.
 

 *429
 
 A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.
 

 N.C. Gen. Stat. § 15A-1443(a) (2017) ;
 
 see also
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 513,
 
 723 S.E.2d 326
 
 , 331 (2012) (citation omitted) ("North Carolina harmless error review requires the defendant to bear the burden of showing prejudice."). Defendant has presented no evidence to indicate the likelihood that the jury would have reached a different verdict had the testimony been allowed.
 
 See
 

 State v. Weeks
 
 ,
 
 322 N.C. 152
 
 , 163,
 
 367 S.E.2d 895
 
 , 902 (1988).
 

 [T]o prove malice in second-degree murder prosecutions involving automobile accidents, it is necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind.
 

 State v. Bethea
 
 ,
 
 167 N.C. App. 215
 
 , 218-19,
 
 605 S.E.2d 173
 
 , 177 (2004) (citation, quotation marks, and brackets omitted). "[W]hat constitutes proof of malice will vary depending on the factual circumstances in each case."
 

 Id.
 

 (citation and quotation marks omitted). In North Carolina, our Supreme Court has recognized that "malice arises when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief."
 
 State v. Reynolds
 
 ,
 
 307 N.C. 184
 
 , 191,
 
 297 S.E.2d 532
 
 , 536 (1982) (citation omitted). "In the context of an automobile accident, this requirement [of malice] means that the State must prove that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind."
 
 State v. Mack
 
 ,
 
 206 N.C. App. 512
 
 , 517,
 
 697 S.E.2d 490
 
 , 493-94,
 
 disc. review denied
 
 ,
 
 364 N.C. 608
 
 ,
 
 704 S.E.2d 276
 
 (2010) (citation and quotation marks omitted).
 

 The State presented evidence that tended to show Defendant (1) drove while his license was suspended, (2) fled to elude law enforcement, and (3) drove at speeds nearly double the posted forty-five mile per hour speed limit. Defendant testified at trial: "There was a road block. I decided to turn around and leave. I decided because the car was not legal, the car had no tags, no insurance, and I don't have a license because they suspended my license for drinking alcohol." Defendant concedes there was sufficient evidence to submit the charge of second degree murder to the jury.
 

 Further, Defendant admitted on cross-examination:
 

 [The State]: Tell us about the stop sticks. You saw the stop sticks. You saw the blue lights and avoided those?
 

 [Defendant]: Yes, ma'am. I saw the blue lights on the left-hand side of the intersection and the right-hand side of the intersection. The only way I saw the spikes, [the victim] said "spikes," pointed them out to me. I went to the right side of the road, slowed down through the intersection, kept going.
 

 [The State]: You kept going and you kept speeding and you lost control of the car again at Will Johnson Road?
 

 [Defendant]: Yes, ma'am.
 

 [The State]: And crashed into the ravine?
 

 [Defendant]: Yes, ma'am.
 

 [The State]: And [the victim] and Justin were asking you to stop, weren't they?
 

 [Defendant]: Yes, ma'am, after the first time. We sped out that first time. About 35 minutes down [the] road they asked me to stop and I told them I got you, meaning, that's slang for you know I'm going to do it.
 

 [The State]: So you kept driving even though they asked you to stop?
 

 [Defendant]: I was looking for a straight to pull over on. We was in that residential area. I didn't know which was streets or which was driveways.
 

 ....
 

 *430
 
 [The State]: You could have stopped back at the road block?
 

 [Defendant]: I could have stopped, yes, ma'am, you are right.
 

 [The State]: They asked you to slow down, too, didn't they?
 

 [Defendant]: Yes, ma'am, and I did.
 

 [The State]: You told the officers that you did it, you were responsible, nobody but me?
 

 [Defendant]: That is true. I am responsible. I was the driver.
 

 Defendant's testimony on cross-examination demonstrates that he understood and appreciated the increased risk that resulted from his conduct. Defendant admitted he was driving the vehicle without a license, intentionally did not stop for police, did not drive safely while in residential neighborhoods or on state roads, failed to stop at stop signs, and lost control of the vehicle several times. Defendant further admitted that he ignored his passengers' pleas to slow down and stop fleeing from law enforcement, knowing that his operation of the vehicle was extremely dangerous.
 
 See
 

 Mack
 
 ,
 
 206 N.C. App. at 517
 
 ,
 
 697 S.E.2d at 493-94
 
 . Defendant's testimony and statements showed he had the requisite "knowledge that injury or death would likely result" from his actions, satisfying the malice element of the crime charged.
 

 Id.
 

 Accordingly, we hold that any possible error in the preclusion of Defendant's medical testimony would have been harmless because the State presented evidence tending to show malice through Defendant's conduct leading to the victim's death.
 
 See
 
 id.
 

 Defendant did not put forth evidence to satisfy the burden of showing prejudice from the trial court excluding his opinion testimony regarding specific medical diagnoses.
 
 See
 

 Lawrence
 
 ,
 
 365 N.C. at 513
 
 ,
 
 723 S.E.2d at 331
 
 .
 

 Conclusion
 

 Defendant received a fair trial free from error. The trial court did not err in precluding Defendant from testifying about his purported diagnosed mental disorders without documentation, evidence, or proper foundation. Furthermore, even if the trial court erred, the purported error was harmless.
 

 NO ERROR.
 

 Judges DAVIS and ZACHARY concur.
 

 [1]
 

 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-403, Rule 403 (2017).